MFA MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, *v.* CROWTHER, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 82—2775

Opinion filed December 12, 1983.

Abramson & Fox, of Chicago (John E. Guy, of counsel), for appellant.

French, Rogers, Kezelis & Kominiarek, of Chicago (Richard G. French and Michael J. Hennig, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

This appeal arises out of a third-party action brought by MFA Mutual Insurance Company (MFA) against Casualty Insurance Company (Casualty) and Casualty's insured, Crowther, Inc., for allegedly wrongfully refusing to defend an underlying personal injury suit brought under the Structural Work Act (Ill. Rev. Stat. 1981, ch. 48, par. 60 *et seq.*). The complaint sought reimbursement of the expenses incurred by MFA in defending the personal injury action plus the judgment paid and interest. Additionally, the complaint included counts predicated upon theories of implied indemnity and contribution. Casualty and Crowther, Inc., filed a motion to dismiss the complaint, and the motion was granted by the trial court. MFA appeals from the order of dismissal. We affirm.

The record reveals as follows. MFA insured Lee Crowther on his home in Joliet, Illinois, under a homeowner's insurance policy issued in 1973. Later that year, Lee Crowther contracted with Kofoid & Tilon, a general contractor, to build a family addition to his home. The roofing and gutter work was to be done by Crowther, Inc., of which Lee Crowther was part owner and vice-president. Crowther, Inc., hired Robert Bishop as a loaned employee to perform some of the roofing work. While performing the work, Bishop sustained serious injuries when he fell off a ladder as he carried a bundle of shingles on his shoulders.

Bishop filed a claim for worker's compensation against his employer, Crowther, Inc. Casualty insured Crowther, Inc., and therefore defended the worker's compensation claim. Eventually, through Casualty, Bishop received his worker's compensation benefits and the claim was settled.

Bishop additionally filed a lawsuit predicated on the Structural Work Act against Lee Crowther individually and Kofoid & Tilon. No third-party action was ever filed against Crowther, Inc. MFA defended Lee Crowther in the Structural Work Act suit under a reservation of rights based on the business pursuits and worker's compensation exclusions in the homeowner's policy. The case was tried and the jury returned a verdict against Lee Crowther in the amount of $175,000. Kofoid & Tilon were found not liable. Lee Crowther appealed the judgment, contending, among other things, that he as a private homeowner could not be held liable as a party "in charge of" the work under the Structural Work Act. The appellate court expressly rejected this argument and affirmed the judgment against Lee Crowther. (*Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 415 N.E.2d 599.) Leave to appeal was denied by the supreme court. 85 Ill. 2d 555.

Robert Bishop thereafter filed a garnishment proceeding against MFA upon the homeowner's insurance policy, and MFA filed a declaratory judgment proceeding for a declaration that it was not liable under the policy because of the business pursuits and worker's compensation exclusions in the policy. The trial court held that the exclusions did not apply and it entered a garnishment judgment against MFA in the amount of the judgment recovered by Bishop, plus interest and costs.

MFA appealed, again asserting the argument that a private homeowner is not "in charge of" the work under the Structural Work Act. The appellate court disagreed and affirmed the trial court on the basis of the previous appellate court decision. (*Bishop v. Crowther* (1981), 101 Ill. App. 3d 933, 428 N.E.2d 1021.) The supreme court denied leave to appeal. 88 Ill. 2d 549.

MFA subsequently filed a third-party action against Crowther, Inc. and Casualty. MFA alleged that Casualty wrongfully refused to accept MFA's tender of defense and indemnification in the Structural Work Act suit. The complaint additionally pleaded actions for implied indemnity and contribution. Casualty and Crowther, Inc. moved to dismiss the third-party complaint pursuant to section 48 of the Civil Practice Act (now codified as section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—619)). The two appellate court opinions in this matter were attached in support of the motion.

The trial court granted the motion to dismiss the third-party complaint.

## I

We first address MFA'S contention that its complaint was improperly dismissed because Casualty had a duty to defend Lee Crowther in the underlying Structural Work Act suit. MFA argues that as a result of Casualty's wrongful failure to defend Lee Crowther, MFA is entitled to recover from Casualty the sum of the judgment plus interest and costs it incurred in defending the action. We find this argument without merit.

In Illinois, an insurer's duty to defend an action against its insured is determined by the allegations of the complaint against him. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 393, 442 N.E.2d 245; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24.) An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 393, 442 N.E.2d 245.) When the allegations of the complaint show that the claim is beyond the policy coverage, the insurer can safely and justifiably refuse to defend. (*Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 784, 387 N.E.2d 700.) Hence, it is apparent from these controlling principles that the following two requirements must be met before an insurer has a duty to defend an action: (1) the action must be brought against an insured; and (2) the allegations of the complaint must reveal the potential of policy coverage.

■ In the case at bar, neither of the foregoing requirements are met. First, no entity insured by Casualty was named as a defendant in the complaint filed by Robert Bishop; Lee Crowther was sued individually, and Crowther, Inc., was never named as a defendant. No third-party action was filed against Crowther, Inc., at that time. Second, all of the allegations in the complaint were directed against Lee Crowther as owner of the home involved in the incident. There were no allegations that Lee Crowther was acting as an agent of Crowther, Inc. or that Lee Crowther was in any way connected with or acting on behalf of Crowther, Inc. If Bishop's complaint had contained such allegations, his claim would have been barred because he would have been suing a co-employee. (*Brooks v. Carter* (1981), 102 Ill. App. 3d 635, 430 N.E.2d 566.) The allegations against Lee Crowther were carefully drafted to avoid the exclusive remedy provision contained in

the Workers' Compensation Act. Ill. Rev. stat. 1981, ch. 48, par. 138.5.

Hence, since the allegations of Bishop's complaint reveal that the action was not brought against Casualty's insured and that there was no potential for coverage under the Casualty policy, Casualty had no duty to defend the underlying action.

MFA cites several cases for the proposition that an insurance company that wrongfully fails to defend its insured will be estopped from any subsequent collateral attack against the underlying proceeding. (*Solo Cup Co. v. Federal Insurance Co.* (7th Cir. 1980), 619 F.2d 1178, 1184; *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 783, 387 N.E.2d 700; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 748, 358 N.E.2d 914; *McFadyen v. North River Insurance Co.* (1965), 62 Ill. App. 2d 164, 172, 209 N.E.2d 833.) These cases, however, fail to support MFA's position; each case involves a situation wherein a named insured was sued and the insurance company argued it had no duty to defend the action based upon an exclusion contained in the insurance policy. In the present case, no entity insured by Casualty was ever made a party to the underlying suit and there is no exclusion being asserted by Casualty. The authorities cited by MFA in this regard therefore are inapplicable.

## II

MFA further argues on appeal that it is entitled to indemnification directly from Crowther, Inc., and derivatively from Casualty on an implied indemnity theory predicated upon active-passive fault. Although Lee Crowther was held to be "in charge of" the work under the Structural Work Act, MFA's complaint sets forth facts alleging that Lee Crowther could only have been guilty of passively violating the Act, and that he should be indemnified by Crowther, Inc., an active wrongdoer under the Act. We find the dismissal of the implied indemnity count to be proper.

■ Liability under the Structural Work Act attaches to those parties "having charge of" the work. (Ill. Rev. Stat. 1981, ch. 48, par. 69.) In order to further the Act's purpose of promoting safety in the construction industry, courts have broadly construed the phrase "having charge of" to effectively include two classes of potential defendants: (1) those having the right to supervise or control the actual work from which the injury arises; and (2) those with overall responsibility for the work being performed on the job site. (*Norton v. Wilbur Waggoner Equipment Rental & Excavating Co.* (1979), 76 Ill. 2d 481,

488-89, 394 N.E.2d 403; *Larson v. Commonwealth Edison Co.* (1965), 33 Ill. 2d 316, 321-22, 211 N.E.2d 247.) Since more than one party can be "in charge of" the work, several parties may ultimately be liable to the injured party. (*Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 117, 373 N.E.2d 1348.) However, it is established that there can be degrees of fault among those who are liable under the Act, and the passively delinquent party, if held accountable, may transfer its statutory liability to the actively delinquent party. (*McInerney v. Hasbrook Construction Co.* (1975), 62 Ill. 2d 93, 104, 338 N.E.2d 868.) In such a case, implied indemnity is proper where there is a "qualitative distinction" between the culpability of two tortfeasors. *Zizzo v. Ben Pekin Corp.* (1979), 79 Ill. App. 3d 386, 398, 398 N.E.2d 382.

In the instant case, the jury found that Lee Crowther, in his capacity as a private homeowner, was "in charge of" the work under the Structural Work Act. This finding, and the judgment against him were affirmed by the appellate court in two separate decisions. The appellate court determined there was sufficient evidence to support a finding that "[Lee] Crowther's liability was not derivative but direct, stemming from his own conduct and actions and not those of Crowther, Inc." *Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 12, 415 N.E.2d 599.

We recognize that the fact that Lee Crowther was found in charge of the work does not in itself lead to the conclusion that he was an active wrongdoer under the Act. (*Miller v. DeWitt* (1967), 37 Ill. 2d 273, 291, 226 N.E.2d 630.) We are further aware that the issue of whether a party was actively or passively at fault under the Act is generally a question for the jury. (*Prater v. Luhr Brothers, Inc.* (1977), 51 Ill. App. 3d 685, 693, 366 N.E.2d 399.) However, this court previously has determined that active fault can be found from the pleadings, as well as the evidence in the original action. (*Gimmeson v. Illinois Power Co.* (1974), 18 Ill. App. 3d 736, 738, 310 N.E.2d 397.) *Gimmeson* indicates that if the pleadings and evidence in the underlying action disclose that a party's conduct could only be characterized as active wrongdoing under the Act, it is not necessary for a trial to be held on the implied indemnity issue. See also *Lindner v. Kelso Burnett Electric Co.* (1971), 133 Ill. App. 2d 305, 273 N.E.2d 196 (third-party plaintiff's conduct, as ascertained from the pleadings, could only be characterized as active wrongdoing under the Act and the dismissal of the third-party complaint for implied indemnity therefore was proper).

■ In the case at bar, it is clear from the pleadings and evidence

in the underlying action that the conduct of Lee Crowther could only be characterized as active fault and was of such a nature so as to preclude any finding of merely passive wrongdoing on his part. No "qualitative distinction" can be found to exist between the conduct of Lee Crowther and Crowther, Inc. so as to warrant recovery on an implied indemnity theory. As the appellate court noted (*Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 4, 10, 415 N.E.2d 599), Lee Crowther testified to the following: he was present on the job site when different tradesmen were there for the construction work; he was familiar with construction practices; he coordinated the work between Crowther, Inc., and Kofoid & Tilon; he had the authority to stop the work of Crowther, Inc., if it was being performed in an unsafe manner; he had the right to schedule the work of the various contractors; and, finally, he was present on the job site as owner of the home and not as an employee of Crowther, Inc.

Additionally, Carl Kofoid, partner of Kofoid & Tilon, testified that Lee Crowther was functioning as a general contractor and walked around the job site with him discussing the work that was completed and the work to be done. Kofoid stated it was assumed that Lee Crowther would handle his areas of specialization, which included the roofing work. (92 Ill. App. 3d 1, 5.) Bishop also testified that Lee Crowther was running the roofing portion of the job and in fact gave him specific instructions about the shingling. (92 Ill. App. 3d 1, 9.) Bishop's injury occurred while he was engaged in the roofing work. Therefore, the evidence shows that Lee Crowther directly supervised and was in charge of the very activity from which the injury and violation of the Act arose.

Moreover, the evidence further reveals that Bishop's injury resulted when he was required to place his ladder on muddy, uneven ground, permitting the ladder to slide while he was upon it. Lee Crowther acknowledged that the perimeter area of the addition had experienced settling of backfill, forming a trench, and that the backfill had to be redone so the ground was not so uneven. (*Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 4, 415 N.E.2d 599.) With regard to the backfill, the appellate court stated:

> "Crowther performed the duties of *** general contractor, he was responsible for job safety. It was his decision whether or not Kofoid should redo the backfill to even it off." (92 Ill. App. 3d 1, 10, 415 N.E.2d 599.)

We note that in *Svenson v. Miller Builders, Inc.* (1979), 74 Ill. 3d 75, 392 N.E.2d 628, the plaintiff was injured when his scaffold sank into a backfill which, as the evidence revealed, was "rough and

sloppy" and inadequate to support the scaffold. The court in *Svenson* held that the contractor who had responsibility for compaction of the backfill could only be an active, rather than passive, wrongdoer under the Act for failing to provide backfill adequate to support the scaffold and, therefore, was not entitled to indemnity.

In the present case, given the evidence and applying the law above, we find no error by the trial court in dismissing the count for implied indemnity.

## III

■■ MFA's third-party complaint includes a count for contribution. The Contribution Act applies only to those actions arising on or after March 1, 1978. (Ill. Rev. Stat. 1981, ch. 70, par. 301.) The "action" which must arise on or after March 1, 1978, is the plaintiff's cause of action in the underlying lawsuit. (*Balmes v. Hiab-Foco* (1982), 105 Ill. App. 3d 572, 575-76, 434 N.E.2d 482; *Verson Allsteel Press Co. v. Major Spring & Manufacturing Co.* (1982), 105 Ill. App. 3d 419, 421-22, 434 N.E.2d 456.) Here, the plaintiff's cause of action in the underlying lawsuit arose in 1973 when Bishop was injured, which was prior to the effective date of the Contribution Act. MFA therefore has no cause of action for contribution.

Finally, we briefly note that MFA pleaded a count seeking equitable relief. In view of the pleadings, litigation and two prior appellate opinions in this matter—all spanning over the past decade—we conclude that equity compels us to affirm the dismissal of MFA's third-party complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McGLOON and CAMPBELL, JJ., concur.