HATTIE MURPHY, Adm'r. of the Estate of George Lee Murphy, Jr., Deceased, Plaintiff-Appellant, v. ADRIAN PETERSON, Defendant (Underwriters at Lloyd's of London, Magill Agency, Garnishee Defendant-Appellee).

First District (2nd Division)   No. 84—311

Opinion filed December 28, 1984.

Rolland H. Stimson, of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (Richard E. Mueller and Hugh C. Griffin, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

This appeal arises out of a garnishment action (nonwage) brought by plaintiff, Hattie Murphy, against defendant, Underwriters at Lloyd's, London, Magill Agency (Lloyd's).

On June 16, 1977, plaintiff filed a wrongful death complaint solely against Adrian Peterson. Plaintiff alleged that, on April 19, 1977, Adrian Peterson negligently fired a weapon, thereby causing the death of plaintiff's decedent, George Murphy, while Murphy was at or near the 400 block of North Avers Avenue, in Chicago. Adrian Peterson had previously been convicted of involuntary manslaughter based upon his actions on April 19, 1977, which resulted in the death of George Murphy. Adrian was apparently guarding his mother's house, vacated because of a fire, when he shot and killed George Murphy. Adrian erroneously believed that Murphy was a burglar he had confronted in the house the night before. In the wrongful death action, plaintiff sought damages against Adrian in the amount of $100,000.

The wrongful death case was tried without a jury by stipulation of counsel. On May 9, 1983, the trial court entered a $90,000 judgment in favor of plaintiff and against Adrian as follows:

"This cause coming on for trial before this Court, the jury having been waived, the Court finds as follows:

1. The defendant, Adrian Peterson, was negligent in causing the death of George Lee Murphy, Jr.

2. Because of his negligence the defendant, Adrian Peterson, is found liable to plaintiffs in the amount of $90,000.00.

It is hereby ordered that judgment be entered in favor of the plaintiffs and against the defendant in the amount of

$90,000.00."

Plaintiff alleges that defendant herein, Lloyd's, was notified of this action, and Lloyd's does not dispute the point. However, it cannot be determined from the record exactly when Lloyd's received notice of the action. In the wrongful death action, plaintiff filed interrogatories to defendant Adrian on February 8, 1978, inquiring as to the existence of liability insurance covering defendant. It could be inferred that plaintiff found out about the policy issued by Lloyd's to Adrian's mother as a result of this interrogatory. On July 28, 1981, plaintiff filed a request to produce the mother's homeowner's policy. The affidavit for garnishment was filed on August 31, 1983, and, as stated above, the judgment against Adrian was entered on May 9, 1983.

From July 8, 1976, to July 8, 1977, Lloyd's had issued an insurance policy to Florence M. Peterson. The policy was a "surplus line policy," meaning that licensed Illinois insurers had refused to write the risk. The policy provided:

"Insured's Name and Mailing Address
Florence M. Peterson
430 North Avers Avenue, Chicago, Illinois
* * *

In consideration of the Provisions and Stipulations Herein *** and of the Premium Specified *** this Certificate *** does insure the Insured named in the Declarations above and legal representatives ***."

Coverage E of the policy was a $25,000 personal liability provision. Coverage E provided in full:

"This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient. This Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of this Company's liability has been exhausted by payment of judgments or settlements."

Adrian Peterson was not named as an insured under any section or provision of the policy.

After entry of the $90,000 judgment against Adrian, plaintiff filed

an affidavit of garnishment against Lloyd's as insurer of Adrian Peterson. Lloyd's answered "no funds" and filed a memorandum supporting its position that its policy did not insure Adrian. Plaintiff filed a memorandum supporting the contrary position. The garnishment judge dismissed the action, stating that the policy only covered Florence Peterson. Plaintiff appeals the dismissal order.

■ Plaintiff's first contention on appeal is that Adrian was an "insured" under his mother's homeowner's policy. Plaintiff advances essentially three arguments in support of her contention: First, that Adrian was acting as his mother's agent when he was guarding the house and that the term "insured" in the personal liability provision should include "agents"; second, that because the policy variously refers to "named insured," "named insured and legal representatives," "named insured and spouse," "named insured's household," and "insured" that the policy is ambiguous and should be construed against Lloyd's, thereby supporting the inference that Adrian should be included as an insured under the personal liability provision; third, that Adrian is a "legal representative" as that term is used in the provision on the first page of the policy, quoted above. Our analysis shows that all three arguments are without merit.

If a provision of an insurance contract is ambiguous, it will be construed against the drafter of the instrument, the insurer. (*United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4, 429 N.E.2d 1203.) If the policy is clear and unambiguous, the court will apply the provisions as written. (88 Ill. 2d 1, 5.) The words of the policy will be given their plain and ordinary meaning, and courts should not strain to find an ambiguity where none exists. 88 Ill. 2d 1, 5.

With reference to the above rules, the policy in this case is not ambiguous and will be applied as written. Plaintiff has taken a number of references from various provisions of the policy and asks this court to add them together in the plaintiff's hope that their sum will equal an ambiguous policy. Plaintiff's cited references are all taken from various portions of the policy, each portion written with an eye toward a particular risk and aimed at explaining the coverage purchased by the insured. The various references to "named insured," "insured," "named insured and spouse," etc., however, cannot be equated with an ambiguous policy. Viewed as a whole, the provisions clearly explain the perils insured against and the extent of the coverage. Applying the provisions of the policy central to this case, as written, it can be seen that the policy specifically names Florence Peterson as the insured, not Adrian, and states that the policy covers "the insured named in the Declarations above [Florence Peterson] and le-

gal representatives." The personal liability provision, as written, covers the "insured" and no one else, save for legal representatives, due to the proviso on page one of the policy. Consequently, plaintiff's first argument is unfounded. Even assuming Adrian was acting as his mother's agent while he was guarding the house, "insured," as used in the personal liability provision, does not by its terms include agents.

Plaintiff's second argument is equally unpersuasive. The various phrases quoted by plaintiff, as stated above, do not demonstrate that the policy is ambiguous and do not indicate additional persons *insured* under the terms of the policy, as plaintiff contends. These phrases variously refer to persons who would be likely recipients of benefits paid to the insured, Florence Peterson, in the event a claim was filed by her and paid by Lloyd's.

Plaintiff's third argument is that Adrian is a "legal representative" within the proviso on page one of the policy. Plaintiff argues that because that phrase is not defined in the policy, it should be construed as being broad enough to include an agent or servant acting on behalf of the named insured. Further, because the phrase is in the plural form, *i.e.*, "legal representatives," it cannot solely refer to an executor or administrator and is, at the least, ambiguous enough to be construed against Lloyd's. Plaintiff has not, however, cited any authority for its assertions, and this court will not strain to find an ambiguity where none exists.

In *Hamilton v. Darley* (1915), 266 Ill. 542, 107 N.E. 798, our supreme court construed the phrase "legal representatives" as it was used in a life insurance contract. The policy there provided: " 'In the event of the death of the beneficiary prior to that of the member, or in case none is named, the benefit then to be payable to the legal representatives of the deceased member.' " (266 Ill. 542, 544.) The appellant asserted that the term "legal representatives," as used in the contract, meant "heirs or next of kin." The supreme court, relying on two of its prior decisions, affirmed the general rule that the term "legal representatives" must be understood in its ordinary meaning, namely, administrators or executors, unless the policy or the surrounding circumstances indicates that the phrase was not used in its ordinary sense or was intended to refer to anyone other than executors and administrators. (*Hamilton v. Darley* (1915), 266 Ill. 542, 545-46; accord, *Johnson v. Van Epps* (1884), 110 Ill. 551, 559-61.) There is nothing in the language of this policy, and plaintiff has pointed to no extrinsic facts indicative of the parties' intention that the term "legal representatives" was used other than in its ordinary sense. The fact

that the phrase is in the plural is irrelevant in light of the manner in which our supreme court defined it in the *Darley* case. Under these facts, therefore, Adrian was not his mother's legal representative. Additionally, although no Illinois cases were found addressing the point, we agree with the cases from other jurisdictions that do not include "agents" within their definition of "legal representatives." See *William F. Steck Co. v. Springfield* (1972), 151 Ind. App. 671, 679, 281 N.E.2d 530, 535 (interpreting a State statute); *Insurance Cos. v. Scales* (1899), 101 Tenn. 628, 635, 49 S.W. 743, 745 (interpreting an insurance policy); *Metzger v. Manchester Fire Assurance Co.* (1894), 102 Mich. 334, 63 N.W. 650 (interpreting provisions of a fire insurance policy).

■ Plaintiff's second point on appeal is that Lloyd's is estopped from raising policy defenses to coverage. Plaintiff contends that when an insurance company takes the position that a complaint potentially alleging coverage is not covered by a policy that outlines the insurer's right and duty to defend, as here, the company cannot simply refuse to defend. It must defend under a reservation of rights or seek a declaratory judgment as to coverage. Failing to do so estops the company from later raising policy defenses to coverage and renders the company liable for the award.

Our supreme court has recently addressed the duty to defend issue on three different occasions. (*Conway v. Country Casualty Insurance Co.* (1982), 92 Ill. 2d 388, 442 N.E.2d 245; *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079; *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 430 N.E.2d 1104.) In *Conway*, the court stated: "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (92 Ill. 2d 388, 393.) Consequently, even though the duty to defend is broader than the duty to indemnify (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 451), it is the complaint that triggers the duty to defend. (*Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 475-76.) If the complaint against the insured raises a possibility of coverage, then failing to defend will estop the insurer from denying coverage in a suit to collect the judgment. (88 Ill. 2d 469, 475.) The principles of these cases disclose two requirements which must be satisfied before an insurer's duty to defend arises. First, the action must be brought against an insured. Second, the allegations must disclose the potential of policy coverage. *MFA Mutual Insurance Co. v. Crowther, Inc.* (1983), 120 Ill. App. 3d 387, 390, 458 N.E.2d 71.

In the present case, the complaint was filed solely against Adrian Peterson. Nowhere does the complaint mention the name of the insured, Florence Peterson. Nor does the complaint contain any allegation even hinting at the theory that Adrian was acting as his mother's agent. Under these circumstances, the possibility of coverage cannot be inferred merely because the son of the insured is named in a lawsuit. Also, even though the duty to defend is broader than the duty to indemnify (*Murphy v. Urso* (1981), 88 Ill. 2d 444, 451), this rule will not be extended to require insurance companies to defend suits that are literally devoid of any allegation suggesting coverage, as in the instant case. We find that Lloyd's duty to defend was never triggered by plaintiff's complaint and, consequently, that Lloyd's is not estopped from denying coverage.

Based upon the foregoing reasons, the order of the garnishment judge dismissing plaintiff's action was proper. Accordingly, the entry of the order of dismissal against plaintiff is affirmed.

Affirmed.

HARTMAN, P.J., and PERLIN, J., concur.