In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-1669

SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,

*Plaintiff-Appellant*,

*v.*

TARGET CORPORATION,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-cv-5910 — **Elaine E. Bucklo**, *District Judge*.

ARGUED NOVEMBER 4, 2016 — DECIDED DECEMBER 29, 2016

Before FLAUM and KANNE, *Circuit Judges*, and MAGNUS-STINSON, *District Judge*.*

MAGNUS-STINSON, *District Judge*. Plaintiff-Appellant Selective Insurance Company of South Carolina ("Selective") filed a declaratory judgment action, asking the district court to declare that it owed no duty to defend or indemnify Defendant-

_____

* Of the Southern District of Indiana, sitting by designation.

Appellee Target Corporation ("Target") in a lawsuit initiated
by customer Angela Brown, who sued Target after a fitting
room door fell on her. The district court granted summary
judgment in favor of Target, finding that Target was an addi-
tional insured on a commercial general liability insurance pol-
icy (the "Policy") that the door supplier, Harbor Industries,
Inc. ("Harbor"), had with Selective. The district court further
held that Selective had both a duty to defend and indemnify
Target for the entire cost Target incurred settling the Brown
litigation. Selective appealed the district court's decision and,
for the reasons that follow, we affirm.

## I.  Background

On December 17, 2011, Angela Brown was injured at a Tar-
get store in Gurnee, Illinois, when a fitting room door came
off its hinges and fell on her.  She sued Target in Illinois state
court on February 14, 2012, and Target removed the case to
federal court.  In her complaint, Ms. Brown alleged that Target
was negligent for failing to maintain and repair the fitting
room door and failing to warn her that the fitting room door
was in an unreasonably dangerous and hazardous condition.
Target filed a third-party complaint against Harbor—the com-
pany that Target had contracted to supply the fitting rooms at
the Gurnee store—seeking contribution and indemnification.
Discovery during the Brown litigation revealed that the same
fitting room door fell on another Target customer approxi-
mately one week before it fell on Ms. Brown. Ultimately, both
Target and Harbor settled with Ms. Brown.

Target tendered its defense of Ms. Brown's lawsuit to Se-
lective on May 7, 2012, claiming that it was an additional in-
sured on Harbor's Policy with Selective because of a contract
with Harbor. On July 30, 2013, Selective filed the underlying

declaratory judgment action against Target in Illinois state court, and Target removed it to federal court on the basis of diversity jurisdiction.

The parties filed cross-motions for summary judgment, and the district court granted summary judgment to Target after finding in its favor on three issues. First, the district court found that Target was an additional insured on Harbor's Policy with Selective because of the interaction between a Supplier Qualification Agreement ("Supplier Agreement") that required Harbor to designate Target as an additional insured and their Program Agreement for the fitting rooms. Second, the district court found that Selective had a duty to defend Target because Ms. Brown's allegations fell within the scope of the Policy, since they could reasonably be read to assert a bodily injury caused in whole or in part by Harbor's product. Third, the district court found that Target had settled the lawsuit with Ms. Brown in reasonable anticipation of liability and, thus, Selective had a duty to indemnify Target for costs incurred defending and settling the Brown litigation. Final judgment was entered in favor of Target in the total amount of $714,450.24. Selective now appeals.

## II. Analysis

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review *de novo* a district court's decision on cross-motions for summary judgment. *Calumet River Fleeting, Inc. v. Int'l Union of Operating Eng'rs, Local 150, AFL-CIO*, 824 F.3d 645, 647 (7th Cir. 2016) (citations omitted). "The general standards for summary judgment do not change: with cross summary judgment

motions, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *Id.* at 647-48 (citations and quotations omitted). Because we are only considering whether it was proper for the district court to grant summary judgment in favor of Target, we resolve any factual disputes in Selective's favor.

Our subject matter jurisdiction over this dispute is based on the parties' diversity of citizenship. 28 U.S.C. § 1332. Federal courts deciding state law claims under diversity jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) (citations omitted). If no party raises a choice of law issue to the district court, "the federal court may simply apply the forum state's substantive law." *Id.* Although Selective correctly points out that there is a Minnesota choice-of-law provision in one of the contracts at issue, it admits that Target and Selective have both argued the insurance coverage issues under Illinois law. Thus, we will continue to apply Illinois law to this case.

*A. The Contracts at Issue*

Three contracts are relevant to addressing the parties' arguments—Target and Harbor's Supplier Agreement, which was executed in April 2001; Target and Harbor's Program Agreement for the fitting rooms, which was executed in April 2009; and Harbor and Selective's Policy, which was in effect when Ms. Brown was injured on December 17, 2011.

Target and Harbor executed the Supplier Agreement in April 2001. It provides, in relevant part, that it

>   shall apply to and control and shall be deemed
>   incorporated into all agreements relating to the

> purchase of non-retail (not for resale) goods
> and/or services from [Harbor] by Target, includ-
> ing, but not limited to, any program agreement
> (or other agreement specific to the goods or ser-
> vices to be provided) entered into by the parties
> (Program Agreement)… . In the event of any
> conflict between this Agreement and the spe-
> cific Order or Program Agreement, the terms of
> the Order or Program Agreement shall govern.

The Supplier Agreement requires Harbor to maintain com-
mercial general liability ("CGL") insurance "in full force and
effect during the term of this Agreement" and to "designate
Target as an additional insured by endorsement acceptable to
Target." The Supplier Agreement provides that it "shall re-
main in effect until terminated as provided herein." It is un-
disputed that neither Target nor Harbor has terminated the
Supplier Agreement pursuant to that provision.

In April 2009, Target and Harbor entered into the Program
Agreement for Harbor to supply fitting rooms to Target. The
Program Agreement incorporates the terms and conditions of
the Supplier Agreement and provides that as long as Harbor
complies with certain criteria, "Target agrees to purchase
from [Harbor] all of Target's needed supply of the Goods [Fit-
ting Rooms] during the Term of this Program Agreement." It
identifies specific parts to be provided, including fitting room
doors. It further provides that "[t]his Program Agreement
shall begin on the Effective Date and end on July 1, 2010
(through the July 2010 cycle) unless otherwise terminated."

Harbor's Policy with Selective that was in effect on the
date of Ms. Brown's injury provides, in relevant part, that Se-
lective "will pay those sums that the insured becomes legally

obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The Policy specifically provides "[p]roducts-completed operations hazard" coverage that "[i]ncludes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product.'" An endorsement to the Policy provides as follows:

> **WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit to add as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or "personal and advertising injury" caused, in whole or in part, by … "your product" … .

*B. The Additional Insured Provision of the Selective Policy*

The parties dispute whether Target was an additional insured on Harbor's Policy with Selective. Specifically, the parties dispute the interaction between Target and Harbor's Supplier Agreement and Program Agreement and whether the term provisions in those contracts conflict.

Under Illinois law, the goal of contract interpretation is to ascertain the parties' intent and, in doing so, we first look to "the plain and ordinary meaning" of the contract language. *Aeroground, Inc. v. CenterPoint Properties Trust*, 738 F.3d 810, 813 (7th Cir. 2013) (quoting *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007)). We must construe the contract "as a whole, viewing each part in light of the others." *Aeroground*, 738 F.3d

at 813 (citing *Gallagher*, 874 N.E.2d at 58). We also must seek to give effect to each clause and word used, without rendering any terms meaningless. *Aeroground*, 738 F.3d at 813 (citing *Hufford v. Balk*, 497 N.E.2d 742, 744 (Ill. 1986)).

There is no dispute that the Program Agreement for Harbor to supply Target with the fitting rooms terminated in July 2010 before Ms. Brown's injury. The parties dispute, however, whether the Supplier Agreement remained in effect when Ms. Brown was injured, such that it could be a "written contract" rendering Target an additional insured on Harbor's Policy with Selective. Selective argues that although the term of the Supplier Agreement was open ended, that provision directly conflicts with the Program Agreement's July 2010 termination date, and the Supplier Agreement expressly states that the Program Agreement controls if there is a conflict. Target disagrees with this interpretation, emphasizing that the Supplier Agreement was a broad agreement that even now has not been terminated.

We agree with the district court that applying the plain and ordinary meaning of the contract language, the Supplier Agreement is a broad agreement governing the overarching relationship between Target and Harbor. It contemplates discrete purchases by Target from Harbor to be governed by the provisions set forth in future program agreements. One of those future agreements was the Program Agreement executed by Target and Harbor eight years after the Supplier Agreement. That Program Agreement required Target to purchase fitting rooms from Harbor until July 2010 if Harbor met the conditions specified therein. Although that obligation ended in July 2010, the language in the more general Supplier Agreement makes it clear that the parties did not intend for

the Supplier Agreement to terminate when specific program agreements terminated. For example, the Supplier Agreement states that Harbor must maintain "[p]roducts and completed operations liability coverage," and it also requires Harbor to provide Target with a certificate of insurance evidencing the required coverage "upon each renewal of such policies." These provisions confirm the parties' intent for the insurance requirement set forth in the Supplier Agreement to survive the expiration of specific program agreements entered into between Target and Harbor. Additionally, this understanding of the relationship between the Supplier Agreement and the Program Agreement construes both contracts as a whole, renders no terms or clauses in either meaningless, and applies the plain and ordinary meaning of the language in each contract to ascertain the parties' intent as to the relationship between the two.[1] For these reasons, we agree with the district court that the Supplier Agreement is a "written contract" requiring Harbor to designate Target as an additional insured on the Policy.

But the inquiry does not end there. The Policy specifically limits additional insured coverage such that, in relevant part, Target is "an additional insured only with respect to liability

---

[1] Selective argues that Target concedes that the Supplier Agreement and the Program Agreement were a single contract. Selective cites Target's third-party complaint in the Brown litigation to support this position because Target attached the contracts as a single exhibit to its pleading and referred to them as one. Selective's position ignores the reality that the two contracts were executed eight years apart and were not one contract. *Cf. Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) ("We further note the long-standing principle that instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract … ").

for 'bodily injury' … caused, in whole or in part, by … '[Harbor's] product' … ." Accordingly, we must also determine whether liability for Ms. Brown's claim was caused by Harbor's product before we can conclude that Target was an additional insured.

It is beyond dispute that the fitting room door that fell on Ms. Brown was Harbor's product. The Program Agreement between Harbor and Target explicitly states that the "product" at issue in the agreement is "fitting rooms," and it specifically identifies "fitting room door" as a component to be purchased.[2] Ms. Brown's complaint alleged that she sustained bodily injury after being struck by a fitting room door that was in "an unreasonably hazardous and dangerous condition." We readily conclude that Ms. Brown's claim for "bodily injury" was "caused, in whole *or in part*," by Harbor's "product." (Emphasis added.) Thus, we agree with the district court that Target was an additional insured under the Selective Policy.

### C. Selective's Duty to Defend Target

The parties dispute whether Selective owed Target a duty to defend it in the Brown litigation. Specifically, the parties dispute whether the allegations in Ms. Brown's complaint against Target were sufficient to trigger Selective's duty to defend. The parties also dispute whether the allegations in Target's third-party complaint against Harbor can be considered in determining whether Selective had a duty to defend Target.

---

[2] We reject Selective's specious argument that a fitting room may have goods or products in it but that it is not a "product" entitled to coverage under the Policy. The Program Agreement unequivocally provides otherwise.

The duty to defend is broader than the duty to indemnify. *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 693 (7th Cir. 2009). As a general rule under Illinois law, the duty of an insurance company to defend against a suit "is determined by the allegations of the complaint in that suit rather than by what is actually proved." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 724 (7th Cir. 2015). To determine whether an insurer has a duty to defend, we compare the factual allegations of the underlying complaint to the language of the insurance policy. *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 810 (7th Cir. 2010). If the facts alleged fall within or potentially within the policy's coverage, the insurer's duty to defend arises. *Id.* "Both the policy terms and the allegations in the underlying complaint are liberally construed in favor of the insured, and any doubts and ambiguities are resolved against the insurer." *Id.* at 811 (citations omitted). The general rules that favor the insured, however, must "yield to the paramount rule of reasonable construction which guides all contract interpretations." *Id.*

When an insurer tries to deny coverage without seeking a declaratory judgment or defending under a reservation of rights, our inquiry is necessarily limited to the allegations in the underlying complaint. *See Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 824 (7th Cir. 2016) (citing *MFA Mut. Ins. Co. v. Crowther, Inc.*, 458 N.E.2d 71, 73 (Ill. App. Ct. 1983) ("An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts which bring the claim within, or potentially within, the policy's coverage.")). When an insurer seeks a declaratory judgment, however, that limitation

does not apply. *Landmark Am.*, 838 F.3d at 824. In fact, the Illinois Supreme Court has emphasized that "'[t]he trial court should be able to consider all the relevant facts contained in the pleadings, including a third-party complaint, to determine whether there is a duty to defend. After all, the trial court need not wear judicial blinders and may look beyond the complaint at other evidence appropriate to a motion for summary judgment.'" *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1020 (Ill. 2010) (emphasis omitted) (quoting *Am. Econ. Ins. Co. v. Holabird & Root*, 886 N.E.2d 1166, 1179 (Ill. App. Ct. 2008)). "The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit." *Pekin Ins.*, 930 N.E.2d at 1020 (citation omitted); *see also Landmark Am.*, 838 F.3d at 824-25 ("[W]hen an insurer has elected to either defend under a reservation of rights or file a declaratory judgment action, … the insurer may present evidence beyond the underlying complaint, so long as it does not tend to determine an ultimate issue in the underlying proceeding.") (citation omitted). A crucial issue is "one that would collaterally estop the plaintiff in the underlying lawsuit from raising a theory of recovery or be crucial to the insured's liability." *Landmark Am.*, 838 F.3d at 825.

Bearing in mind that we must construe the Policy liberally in favor of coverage when determining the duty to defend, we agree with the district court that the allegations in Ms. Brown's complaint against Target were sufficient to trigger Selective's duty to defend. Ms. Brown alleged that she was a business invitee at Target's store in Gurnee when the fitting room door fell off its hinges and injured her. While Selective emphasizes that Ms. Brown's legal claims focused on Target's negligence, Illinois law gives little weight to the legal label a

party uses to characterize the underlying allegations. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins.*, 611 F.3d 339, 346 (7th Cir. 2010) (citing *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 2001)). Instead, if "the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy," a duty to defend arises. *Santa's Best*, 611 F.3d at 346 (citing *Lexmark*, 761 N.E.2d at 1221).

As we have concluded, Target is an additional insured on the Policy because the allegations in Ms. Brown's complaint can reasonably be read to fall within the Policy's coverage for bodily injury caused in whole or in part by Harbor's product. The parties do not dispute that the Policy provides liability coverage for bodily injury arising out of Harbor's product within the "products-completed operations hazard" provision. This triggered Selective's duty to defend. *See Amerisure*, 622 F.3d at 810 ("If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises."). Illinois law rejects Selective's argument that it can avoid this duty simply because of legal labels Ms. Brown used in her complaint. *See Santa's Best*, 611 F.3d at 346 (citing *Lexmark*, 761 N.E.2d at 1221).

Alternatively, even if the facts alleged in Ms. Brown's complaint were insufficient to trigger Selective's duty to defend, the allegations in Target's third-party complaint against Harbor certainly were enough. We can consider the allegations of Target's third-party complaint because Selective sought a declaratory judgment and does not argue that considering them will determine an issue crucial to the determination of the underlying lawsuit. *Landmark Am.*, 838 F.3d at 824. In its third-party complaint, Target alleged that it contracted with Harbor

for Harbor to design and provide materials for the construction of the Gurnee fitting rooms. Target also alleged that Harbor's negligence in doing so caused Ms. Brown's injuries. Again, these allegations squarely fall within the Policy's coverage. Thus, we agree with the district court that Selective had a duty to defend Target in the Brown litigation.

*D. Selective's Duty to Indemnify Target*

The parties disagree whether Selective had a duty to indemnify Target for costs it incurred while defending and settling the lawsuit with Ms. Brown. On appeal, Selective emphasizes that it is impossible to reasonably conclude that Target's entire settlement payment represented damages for a covered loss.[3]

The duty to indemnify "is determined once liability has been affixed." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 724 (7th Cir. 2015). If an insured settles an underlying claim before trial, "it must show that it settled an otherwise covered loss in reasonable anticipation of liability" for the duty to indemnify to apply. *Caterpillar, Inc. v. Great Am. Ins. Co.*, 62 F.3d 955, 966-67 (7th Cir. 1995) (citing *United States Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1244 (Ill. App. Ct. 1994)); *see also Rosalind Franklin Univ. of Med. & Sci. v. Lexington Ins. Co.*, 8 N.E.3d 20, 39 (Ill. App. Ct. 2004) ("When an insured settles an underlying claim, it must show that the settlement was made in reasonable anticipation of liability for an otherwise covered loss.").

---

[3] Selective does not challenge the reasonableness of the amount of Target's settlement.

There is no evidence in the record that Target allocated its settlement with Ms. Brown into covered and uncovered claims. We have previously predicted how Illinois courts would handle this situation in the context of the duty to indemnify:

> Consistent with the Illinois policy that a coverage action should not require the insureds to conclusively establish their own liability in the interest of promoting settlement, we think the proper inquiry is whether the claims were not even potentially covered by the insurance policy. A competing policy interest is equity—it is inequitable to require an insurer to pay for a settlement that is clearly not within the terms of its policy. Consequently, our prediction is that Illinois courts, in cases in which it is possible that none of the settlement was attributable to the dismissal of claims for damage covered by the insurer's policy, would evaluate whether a "primary focus" of the claims that were settled was a potentially covered loss (burden on the insured). Conversely, if it can be established that the claims were not even potentially covered (burden on the insurer), then the insurer is not required to reimburse the settlement.

*Santa's Best*, 611 F.3d at 351-52. After *Santa's Best*, the Illinois Appellate Court followed our predicted approach. *See Rosalind*, 8 N.E.3d at 40 ("In cases where an insured enters into a settlement that disposes of both covered and non-covered

claims, the insurer's duty to indemnify encompasses the entire settlement if the covered claims were 'a primary focus of the litigation.'") (citing *Santa's Best*, 611 F.3d at 352).

Based on this precedent, the first question is whether Target settled an otherwise covered loss in reasonable anticipation of liability. If so, the second question is whether the covered claims were a primary focus of the litigation.

We conclude that Target settled an otherwise covered loss in reasonable anticipation of liability in the Brown litigation. Ms. Brown testified that she carried an article of clothing into Target's fitting room, she closed the fitting room door behind her and latched it, she tried on the clothing, and then she unlatched the fitting room door and it fell on her. Discovery in that case revealed that the same fitting room door fell on another Target patron on December 9, 2011—approximately one week before it fell on Ms. Brown. This establishes a covered loss because it shows that Ms. Brown sought damages from Target for a bodily injury "arising out of" Harbor's "product"—the fitting room door. Thus, we conclude that Target settled an otherwise covered loss in reasonable anticipation of liability to Ms. Brown.[4]

Turning to the second question, Selective argues that it does not have a duty to indemnify Target for the entire amount of its settlement because at least some of Ms. Brown's

---

[4] Target submitted an affidavit from counsel to the district court to support its position, but Selective objected to its admissibility and the district court did not consider it. We agree with the district court that even without considering counsel's affidavit, the cited evidence is sufficient to confirm that Target settled an otherwise covered loss in reasonable anticipation of liability.

claims against Target were based on premises liability, which would not be covered by the Policy. This argument requires us to determine whether the covered claims were "a primary focus of the litigation." *See Rosalind*, 8 N.E.3d at 40 ("In cases where an insured enters into a settlement that disposes of both covered and non-covered claims, the insurer's duty to indemnify encompasses the entire settlement if the covered claims were 'a primary focus of the litigation.'") (citing *Santa's Best*, 611 F.3d at 352). While neither the district court nor the parties addressed the primary focus standard in analyzing Selective's duty to indemnify Target, it is clear from the evidence that the district court cited in analyzing the duty to indemnify that covered claims were a primary focus of the litigation. Specifically, the Brown litigation focused on the injuries Ms. Brown sustained when Harbor's fitting room door fell on her, and Selective's counsel admitted at oral argument that Selective defended Harbor in the Brown litigation and also settled with her for the injuries she sustained. For these reasons, we conclude that Selective had a duty to indemnify Target for the entire cost it incurred settling the Brown litigation.

## III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.