(No. 55368.—

PHILIP A. CONWAY, Appellee, v. COUNTRY CASUALTY INSURANCE COMPANY, Appellant.

*Opinion filed October 22, 1982.—Rehearing denied November 24, 1982.*

RYAN, C.J., took no part.

Hupp, Irion, Reagan & Hupp, P.C., of Ottawa (George C. Hupp, Sr., and Gale F. Murrin III, of counsel), for appellant.

Herbolsheimer, Lannon, Henson, Duncan, & Reagan, P.C., of La Salle (R. J. Lannon, Jr., and Robert M. Hansen, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

On December 4, 1973, the plaintiff, Philip A. Conway, was driving an automobile that collided with a vehicle operated by Hayfa Assalley. Ms. Assalley was injured in the accident. At the time of the accident Conway was insured under a family combination insurance policy issued by the defendant, Country Casualty Insurance Company (Country Casualty). The insurance policy had a bodily injury liability limit of $10,000 for each injured person and a property damage liability limit of $5,000 per accident. Country Casualty, under an advanced payment program, began to reimburse Ms. Assalley for expenses that were a direct result of her injuries and to compensate her for lost income. She received a total of $9,736.79 through October 24, 1974, on the advanced payment program. On February 19, 1975, Ms. Assalley filed suit against Conway for personal injuries she received. On March 11, 1975, Country Casualty and Ms. Assalley, with the approval of Conway, agreed that Country Casualty would pay Ms. Assalley a total of

$10,742.35, representing the bodily injury liability limit of $10,000 under the policy and property damage of $742.35. The insurer paid Ms. Assalley $900.21 that day, completing its payment of $10,742.35. However, Ms. Assalley did not execute a release in favor of Conway or Country Casualty in exchange for the payment, and her personal injury suit against Conway remained in an active status. Subsequently, Conway requested Country Casualty to defend him in the suit. When Country Casualty refused, Conway obtained his own counsel. On January 3, 1977, a settlement was reached with Ms. Assalley, and Conway paid her an additional $10,000 in exchange for a release for himself and Country Casualty. Conway was given a statement by his attorney for $2,386.95 to cover his services in defense and settlement of the suit.

On January 6, 1977, Conway brought the action involved here against Country Casualty to recover the $10,000 and for attorney fees for both the suit for reimbursement and Ms. Assalley's suit against him. The circuit court of La Salle County, following a bench trial on a stipulation of facts, entered judgment in favor of Conway. The judgment was for $10,000, representing his settlement payment, plus $2,386.95 for attorney fees for defense of the personal injury action, and interest at the rate of 5% in the amount of $2,167.72. ($1,750 represented 5% on the additional $10,000 settlement and $417.72 represented 5% interest on the $2,386.95 of attorney fees.) The appellate court affirmed (97 Ill. App. 3d 768) and we allowed Country Casualty's petition for leave to appeal. 73 Ill. 2d R. 315.

The questions presented are: whether the insurer's payment to the extent of the liability limits of its policy to the claimant discharges its duty under the policy to defend its insured in the personal injury action; if not, whether the insured can recover the amount he pays in excess of the liability limits of the policy to settle a suit

by the claimant; and, if the insurer's duty to defend is not discharged, whether the insured is entitled to interest on any part of the damages awarded.

The policy issued to Conway states that Country Casualty agrees "[t]o pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of [bodily injury or property damage] caused by accident arising out of the ownership, maintenance or use, \*\*\* of a Vehicle \*\*\* and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; but the Company may make such investigation and settlement of any claim or suit as it deems expedient." The next paragraph provides that "[t]he Company shall not be obligated to pay any claim or judgment or to defend any suit or prosecute or maintain any appeal after the applicable limits of the Company's liability have been exhausted by payment of any judgments or settlements."

In this jurisdiction an insurer's duty to defend an action against its insured is determined by the allegations of the complaint. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187; *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777.) An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. (*Murphy v. Urso* (1981), 88 Ill. 2d 444; *Sheppard, Morgan & Schwaab, Inc. v. United States Fidelity & Guaranty Co.* (1976), 44 Ill. App. 3d 481; *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944; *Solo Cup Co. v. Federal Insurance Co.* (7th Cir. 1980), 619 F.2d 1178.) Country Casualty has not questioned the sufficiency of the personal injury complaint to

show potential or actual coverage. Instead, Country Casualty contends that its payment of the entire property damage, together with its payment to the extent of the policy's bodily injury liability limit, discharges it from its duty to defend. Country Casualty argues that it would be anomalous to require it to defend an action where no further amount is payable under the terms of the policy and where it no longer has an interest in the outcome of the personal injury action.

The general holding in this State is that an insurer's duty to defend and its duty to indemnify are separate and distinct and that the former duty is broader than the latter. (*Murphy v. Urso* (1981), 88 Ill. 2d 444; *Aetna Casualty & Surety Co. v. Coronet Surety Co.* (1976), 44 Ill. App. 3d 744; *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944; *Palmer v. Sunberg* (1966), 71 Ill.App. 2d 22; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184; *Solo Cup Co. v. Federal Insurance Co.* (7th Cir. 1980), 619 F.2d 1178; *Western Chain Co. v. American Mutual Liability Insurance Co.* (7th Cir. 1975), 527 F.2d 986.) Thus, since the insurer's duty to defend its insured is not dependent upon a duty to indemnify, but arises from the undertaking to defend stated in the policy, an insurer's payment to its policy limits, without more, does not excuse it from its duty to defend. (*Maneikis v. St. Paul Insurance Co.* (7th Cir. 1981), 655 F.2d 818; see also *Western Chain Co. v. American Mutual Liability Insurance Co.* (7th Cir. 1975), 527 F.2d 986.) It would appear that whether an insurer, which has agreed to defend any suit "seeking damages under the terms of this policy," is discharged from its duty to defend its insured simply by the payment of the policy limits has not been expressly decided by a court in this State.

While the courts of jurisdictions where the question has been considered have not been unanimous in their

decisions, we consider that the better view is that the insurer is not discharged. See *Allstate Insurance Co. v. Novak* (1981), 210 Neb. 184, 313 N.W.2d 636; *Kocse v. Liberty Mutual Insurance Co.* (1978), 159 N.J. Super. 340, 387 A.2d 1259; *Ursprung v. Safeco Insurance Co. of America* (Ct. App. Ky. 1973), 497 S.W.2d 726; *Landando v. Bluth* (N.D. Ill. 1968), 292 F. Supp. 975; *Simmons v. Jeffords* (E.D. Pa. 1966), 260 F. Supp. 641.

Country Casualty's reliance on *Denham v. La Salle-Madison Hotel Co.* (7th Cir. 1948), 168 F.2d 576, and *Oda v. Highway Insurance Co.* (1963), 44 Ill. App. 2d 235, to support its contention that its duty to defend was extinguished by payment of the policy limits is misplaced. Although the court in *Denham* decided the case under what it deemed the law of this State to be, there had been no express decision on the question. Also, *Denham* is inapplicable for the additional reason that the holding was based on different policy language.

*Oda,* too, is distinguishable. There, the insurer defended the personal injury action against its insured and paid the plaintiff to the limits of its policy. Thereafter, a suit was filed for loss of consortium arising out of the same injury. The insurer refused to defend the second action. The appellate court, relying on *Denham,* held that after the insurer had made payments to its policy's limits it had no *further* duty to defend its insured. The court did not hold that the insurer was discharged from its duty to defend its insured in the original personal injury action against him. The decision was that once the insurer had defended its insured in that action, the insurer did not have to defend subsequent actions based on the same injury, having already made payment to the extent of its liability limit.

Our holding that an insurer cannot discharge its duty to its insured simply by making payments to the claimant to the extent of its policy's limits is clearly sup-

ported by the language of the policy here. As we have noted above, the policy provided that the insurer could terminate its obligation to defend and pay by payments to the policy's limits of "any judgments or settlements." The insurer here, of course, made no payment pursuant to a judgment or a settlement agreement.

Turning to the question of the consequences of Country Casualty's refusal to defend Conway, the insurer agrees that an insurer's failure to defend, when it is under obligation to do so, makes it liable for reasonable attorney fees and the costs incurred by its insured. Conway contends that the insurer is liable for the entire judgment rendered against the insured or a settlement made by him, even if it exceeds the policy's limits. Both the trial court and the appellate court accepted Conway's position. In doing so, the appellate court (97 Ill. App. 3d 768, 775) quoted the following from *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 194-95:

> " 'By its unjustified refusal to defend an action against the insured, an automobile liability insurer becomes subject to the following new and positive obligations: (1) liability for the amount of the judgment rendered against the insured or of the settlement made by him; (2) liability for the expenses incurred by the insured in defending the suit; (3) liability for any additional damages traceable to its refusal to defend.
>
> The first and most obvious of these positive obligations created by an insurer's unjustified refusal to defend is its obligation to pay the amount of the judgment rendered against the insured or of any settlement made by the insured of the action brought against him by the injured party.' " (43 Ill. App. 2d 184, 194-95, quoting from 7 Am. Jur. 2d *Automobile Insurance* sec. 167 (now 7 Am. Jur. 2d *Automobile Insurance* sec. 396 (1980).)

One must, however, look at the facts in a given decision. *Sims* did not involve a tort judgment against the insured which exceeded the policy's liability limits. If it had, the

*Sims* court well might have reached a different result on the basis of the two sentences following the sentences the court did quote from 7 Am. Jur. 2d *Automobile Insurance* sec. 167. The omitted two sentences read: "However, this obligation of the insurer to pay the amount of judgment or settlement is not unlimited. It does not render the insurer liable for more than the amount of the policy limit, nor does it obligate the insurer to pay the amount of an unreasonable settlement or a settlement made in bad faith." One would observe also that in *Sims* there was no payment made to the claimant by the insurer. Too, "[w]hile the wrongful refusal of the insurer to conduct the defense of an action based upon a claim within the coverage of the policy makes it liable, the insurer is not exposed to a greater liability to the insured than the limit of the amount stated in the policy. The failure to defend, however, does expose the defendant to the additional liability for the cost and expense which plaintiff was put to by reason of defendant's breach of the contract and embraces reasonable attorney fees." *Gould v. Country Mutual Casualty Co.* (1962), 37 Ill. App. 2d 265, 290; accord *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777.

In *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, the court indicated that an insurer, unjustifiably refusing to defend its insured, would be liable for the entire settlement or judgment regardless of whether it was in excess of the policy limits. The statement though was the subject of later comment: "However, that statement was only dictum since the court limited recovery to the policy limits, the insured and injured party having entered into an agreement holding the insured harmless from any personal recovery against her. The general rule is to the contrary. The mere failure to defend does not, in the absence of bad faith, render the insurer liable for that amount of the judgment in excess of the policy limits. [Citations.] Nevertheless, damages for a breach

of the duty to defend are not inexorably imprisoned within the policy limits, but are measured by the consequences proximately caused by the breach." (*Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 790; *cf.* 7C Appleman, Insurance Law and Practice sec. 4689, at 209 (1979) (damages are measured by the "additional loss legally traceable to the breach").) The $10,000 paid by Conway to Ms. Assalley cannot be said to have been proximately caused by Country Casualty's breach absent a showing that there could have been a settlement for a lesser amount if Country Casualty had defended the action. (See 7C Appleman, Insurance Law and Practice sec. 4689 (Supp. 1981).) There was no such showing made here and it will be assumed that Conway would have been required to pay Ms. Assalley the $10,000 even had Country Casualty defended the personal injury action against him.

As stated above, it has been held that an insurer is liable for the full amount of a judgment or settlement, even if it exceeds the policy limits, if the insurer acted in bad faith by refusing to defend its insured. (*Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777; 7C Appleman, Insurance Law and Practice sec. 4689 (1979).) Although the trial court here made no finding with regard to bad faith, the appellate court said that "the refusal of the insurer to afford a defense after paying the policy limits to the tort plaintiff in the absence of an adverse judgment or settlement, when by the very terms of the policy such action can be taken only when the policy limits are exhausted by payment of a judgment or settlement, reflects bad faith." (97 Ill. App. 3d 768, 775-76.) The question of an insurer's bad faith typically is one for the trial court, rather than for a court of review. We cannot say that it was demonstrated that the insurer's declining to defend here was in bad faith. In a letter to Conway, Country Casualty stated that it had reached its decision not to defend on the holdings and language of *Denham* and *Oda*. The fact that we judge

Country Casualty's reliance on those decisions was erroneous is not, considering all of the circumstances and those decisions, translatable, without more, into a showing of bad faith. We cannot say that the trial court, in not finding bad faith on the part of the insurer, clearly erred.

Conway contends that he is entitled to recover prejudgment interest on the $10,000 settlement under section 2 of the Interest Act (Ill. Rev. Stat. 1977, ch. 74, par. 2). Section 2 states that "[c]reditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." Since we decide that the insurer, which unjustifiably, but not in bad faith, declined to defend its insured, is not liable in excess of its policy limits, and since Country Casualty paid the claimant to the extent of the policy's bodily injury liability limit in advance of the filing of the personal injury suit, Conway obviously is not entitled to prejudgment interest under the statute. There was not unreasonable and vexatious delay in any required payment. The insurer does not dispute, however, that it is required to pay interest on the attorney fees from January 3, 1977, until the date of payment. January 3, 1977, was the date of the settlement and it is when the attorney fees became due and capable of exact computation. See *Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.* (1977), 45 Ill. App. 3d 401.

For the reasons given, the portions of the judgment of the appellate court and the judgment of the circuit court of La Salle County, holding that Country Casualty was liable to the plaintiff for the amount paid by him in settlement of

the suit and holding that the plaintiff was entitled to prejudgment interest on the amount of the settlement are reversed. The balance of the judgments is affirmed. The plaintiff may recover $417.72 interest in addition to the attorney fees.

*Appellate court affirmed in part and reversed in part; circuit court affirmed in part and reversed in part.*

CHIEF JUSTICE RYAN took no part in the consideration or decision of this case.