Stanley GREEN, as Assignee of Dexter Hopkins, Plaintiff-Appellee,

v.

The J.C. PENNEY AUTO INSURANCE COMPANY, INC., a corporation, Defendant-Appellant.

No. 83–1003.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1983.

Decided Nov. 17, 1983.

As Amended Dec. 5, 1983.

Rehearing Denied Jan. 13, 1984.

David I. Hares, St. Louis, Mo., Strubinger, Keller, Willbrand & Soraghan, Belleville, Ill., for defendant-appellant.

Edward J. Kionka, Kionka & Kionka, Carbondale, Ill., for plaintiff-appellee.

Before PELL, COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from a declaratory judgment action in which the district court declared the existence of a valid insurance contract and ordered the defendant insurer to pay $146,788.97 to an assignee of the insured pursuant to that contract. We affirm the district court's finding that a valid insurance contract was in effect at the time of the incident giving rise to this action, but vacate and remand on the issue of the proper measure of damages.

In April 1977, the putative insured, Dexter Hopkins, had been insured for a period of approximately a year and a half by the J.C. Penney Insurance Company ("Penney"). On April 23, 1977, Penney notified Hopkins that a premium of $226.00 was due on his automobile insurance policy and that

if it was not paid before May 23, the end of the six-month policy term, the policy would expire on that date. On May 24, Hopkins mailed a renewal slip and a check for $226.00 to Penney, and the following day he called Penney to inform it that his check was in the mail. He was told by a Penney representative that his coverage would be reinstated and that it would go into effect the next day, May 26. As a follow-up to this phone conversation, Penney on the same day mailed to Hopkins a notification indicating that coverage was bound on May 26 and would be cancelled on June 5 unless payment was received by that date.

On May 27, 1977, Penney received Hopkins's check and renewal slip through the mail, and stamped the renewal slip as paid. A short time thereafter, Penney issued a policy and declarations sheet to Hopkins, indicating the coverage and conditions relating to the coverage.

On June 17, 1977, Hopkins became involved in an automobile accident with the appellee in this case, Stanley Green, while Hopkins was operating the automobile indicated on the policy issued by Penney. The loss was reported properly and in a timely manner to Penney, and Penney made a payment of approximately $1,500 to Hopkins to cover damage to his automobile.[1]

On July 13, 1977, Penney sent to Hopkins a notification that his check had not cleared on the first presentation to his bank. Penney informed Hopkins that the check would be presented again for payment on July 20, and that if the check did not clear upon presentation the second time, the policy previously issued would be cancelled retroactively, as of May 26, 1977. The check was presented for payment a second time, and it did not clear. Some time within the next five days, Hopkins made two phone calls to Penney in an effort to determine whether his check had cleared, but was given no definitive answer. Penney retained the check until November 3, 1977, at which time it returned the check to Hopkins along

---

1. At oral argument, Penney took the position that this payment was made in error, and that Hopkins was not entitled to any money from

Penney. However, it has chosen not to seek recovery of the $1,500.

with a letter stating that the check had not cleared upon the second presentation and that the insurance policy on Hopkins's automobile was cancelled retroactively, as of May 26, 1977.

The appellee, Stanley Green, brought suit against Hopkins in the Circuit Court of St. Clair County, Illinois, for injuries sustained in the June 17 automobile accident allegedly as a result of Hopkins's negligence. Penney received notification of the suit, but refused to answer the complaint or provide a defense for Hopkins. Penney did not at any time file a declaratory action or undertake a defense of Hopkins under a reservation of rights, but rather elected to stand on its position that no policy of insurance covering Hopkins was in existence at the time of Hopkins's car accident with Green.

Attorneys for Green in the action in the circuit court continually apprised Penney and its attorneys of the action and eventually, after notice to Penney, took a default judgment against Hopkins. The judgment was entered on February 25, 1981, in an amount of $122,500.00. No appeal was filed, and after the judgment became final Green sought and received from Hopkins an assignment of any rights Hopkins might have against Penney. Green then filed a declaratory judgment action against Penney in the Circuit Court of St. Clair County. Penney removed the case to the United States District Court for the Southern District of Illinois based on diversity jurisdiction.

The district court found that a valid insurance contract was in effect at the time of Hopkins's accident involving Green, and that Penney had acted in bad faith by failing either to seek a declaratory judgment to determine its obligations to Hopkins or to defend Hopkins under a reservation of rights. Although Hopkins's policy with Penney had a $25,000 limit, the court assessed damages against Penney in the amount of $146,788.97. Penney appeals from this judgment.

The two basic issues on appeal are: (1) whether a valid insurance contract was in effect at the time of the automobile acci-

dent giving rise to this litigation; and (2) if a valid insurance contract was in effect, whether the district court erred in holding Penney liable for an amount in excess of the policy limits.

I

The appellee presents us with three theories upon which we can uphold the lower court ruling that a valid contract was in effect at the time of Hopkins's accident. The first is that Penney did not effectively cancel Hopkins's insurance policy before the accident because it failed to give Hopkins the notice of cancellation required by law and by the terms of the policy itself. The second theory is that the policy was in effect because Penney unconditionally accepted Hopkins's check as payment of his premium. The third theory, one closely related to the second, is that by accepting Hopkins's check and by its conduct thereafter, Penney waived its right to declare the policy forfeited. Because we find the first theory—concerning Penney's failure to give adequate notice of cancellation—to provide a sufficient basis for a finding that an insurance contract was in effect at the time of Hopkins's accident, we need not decide the merits of the other two theories.

Under Illinois law, which is the appropriate body of law to be applied in this diversity case, an insurance company must comply with statutory notice requirements in order to cancel an insurance policy effectively. Section 143.15 of the Illinois Insurance Code (Ill.Rev.Stat.1977, ch. 73, par. 755.15) provides: "All notices of cancellation of insurance ... must be mailed at least 30 days prior to the effective date of cancellation .... However, where cancellation is for nonpayment of premium at least 10 days notice of cancellation shall be given." The purpose of the statutory notice requirement is to make the insured aware that his or her policy is being terminated and to afford the insured time to obtain other insurance. *Conley v. Ratayzcak,* 92 Ill.App.3d 29, 33, 46 Ill.Dec. 616, 619, 414 N.E.2d 500, 503 (1980). It also has been stated that the purpose of the requirement

is merely to forestall a retroactive notice. *Id.* at 34, 46 Ill.Dec. at 619, 414 N.E.2d at 503; *Hardware Mutual Casualty Co. v. Beals,* 21 Ill.App.2d 477, 484, 158 N.E.2d 778, 782 (1959). Illinois law also requires that notice of cancellation conform to the provisions in the insurance policy, and cancellation can be effected only through strict compliance with the terms of the policy. *Conley v. Ratayzcak,* 92 Ill.App.3d at 34, 46 Ill.Dec. at 619, 414 N.E.2d at 503; *Moynes v. National Surety Corp.,* 272 F.2d 835, 837 (7th Cir.1959). The policy in question in the instant case required notice at least ten days before cancellation of the policy.

█ . The threshold question that we must answer is whether Penney was in fact attempting a cancellation, as opposed to a refusal to renew, so that Hopkins may be entitled to the protection of the notice of cancellation requirements. We find that Penney was attempting a cancellation. Had Hopkins not taken steps to reactivate his policy after the May 23, 1977, expiration date, the policy would have terminated of its own accord. However, once Hopkins tendered his premium check and Penney informed him that his policy was "reinstated," and both a binder and a policy were issued granting coverage from May 26, the policy was reactivated and could be terminated only by cancellation or upon its expiration by its own terms after six months. This conclusion is buttressed by the fact that Penney itself has characterized its attempted termination of the policy as a cancellation, both in its correspondence with Hopkins, and throughout its brief to the court. *See Conley v. Ratayzcak,* 92 Ill. App.3d 29, 46 Ill.Dec. 616, 414 N.E.2d 500 (1980) (insurer's characterization of its termination of a policy converted what otherwise would have been an expiration notice into a cancellation).

2. The $146,788.97 figure includes the $122,-500.00 judgment against Hopkins, plus interest. It is unclear from the district court's findings whether it also includes the expenses incurred by Hopkins as a result of Penney's failure to defend him in the state court action brought by Green.

█ We must now determine whether the notice provided to Hopkins by Penney was in compliance with the Illinois Insurance Code and the terms of Hopkins's insurance policy itself. We hold that it was not. In fact, the type of retroactive notice provided by Penney is precisely what the statutory and policy notice provisions were designed to prohibit. Notice to the insured must be given *prior* to the effective cancellation date or it is of no value to the insured. Thus, it is clear that the notices that Penney sent to Hopkins on July 13, 1977, and November 3, 1977, purporting to cancel his policy retroactively as of May 26, 1977, could not and did not effect a cancellation as of May 26, 1977. Moreover, the May 26 notification sent to Hopkins, informing him that his policy would be cancelled on June 5 unless payment was received by that date, could not operate as a notice of cancellation because Hopkins was not told until July 13 that his check had not in fact cleared. On these facts, we conclude that since Hopkins had not had any notice of the cancellation of his policy as of June 17, 1977, the date of his accident with Green, his policy was legally in effect at that time.

## II

We now turn to the question of the proper measure of damages. The district court held that because Penney wrongfully refused to defend its insured without seeking a declaratory judgment or some other clarification of its obligations, it was in bad faith and is therefore estopped to raise policy limits as a limitation on its liability. It assessed full damages against Penney in the amount of $146,788.97.[2] The appellant challenges that holding, arguing that the evidence before the district court was not sufficient to support a finding of bad faith.[3] We agree with the appellant.

3. The appellant also contends that the district court erred in finding bad faith because it was not raised in the pleadings. We reject this contention. This circuit has adopted a liberal policy respecting amendments to pleadings so that cases may be decided on their merits and not on the basis of technicalities. *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329,

It is the settled rule in Illinois that the mere failure of an insurer to defend its insured does not expose the insurer to liability above the limits of the insured's policy. *Conway v. Country Casualty Insurance Co.,* 92 Ill.2d 388, 397, 65 Ill.Dec. 934, 938, 442 N.E.2d 245, 249 (1982); *Reis v. Aetna Casualty and Surety Company of Illinois,* 69 Ill.App.3d 777, 790, 25 Ill.Dec. 824, 834, 387 N.E.2d 700, 710 (1978). There appear to be two important qualifications of this rule. First, the wrongful failure to defend does expose the insurer to additional liability for the cost and expense incurred by the insured because of the breach of the insurer's obligation to defend, including reasonable attorneys' fees. *Conway v. Country Casualty Insurance Co.,* 92 Ill.2d at 397, 65 Ill. Dec. at 938, 442 N.E.2d at 249. Second, the insurer is liable for the full amount of a judgment or settlement, even if it exceeds the policy limits, if the insurer has acted in bad faith by refusing to defend its insured. *Id.* at 397, 65 Ill.Dec. at 938, 442 N.E.2d at 249.

It is implicit in the law stated above that the mere failure of an insurer to defend its insured does not constitute bad faith. Yet the court below comes very close to saying that it does. The court stated:

> If Penneys believed that the check was only conditional payment, even though nothing in their policy or notice of premium due gave any evidence of this, or if their failure to promptly notify Hopkins that the check had been returned did not constitute a waiver, the broad scope of the insurer's duty to defend required that they either defend under a reservation of rights or seek a declaratory judgment. If

they had done either, both their rights and the insured's rights would have been protected. To do neither this Court finds constitutes bad faith.

Findings of Fact and Conclusions of Law at 4. Although the question of an insurer's bad faith typically is one for the trial court, rather than for a court of review, *Conway v. Country Casualty Insurance Co.,* 92 Ill.2d at 398, 65 Ill.Dec. at 938, 442 N.E.2d at 249, we think that the district court erred in finding bad faith in this case. In the *Conway* case, a case which was decided only weeks before the district court decision in this case and which clarified the Illinois rule on insurers' liability over and above policy limits, there is no indication that the insurer sought to clarify its obligations before refusing to defend its insured, and yet no bad faith was found. Moreover, the implication of *Conway* and other Illinois cases which discuss bad faith in this context is that a finding of bad faith should be based on evidence that an insurer had improper reasons for refusing to defend its insured. In short, there is no authority in Illinois law for the district court's holding that an insurer who merely refuses to defend its insured without seeking clarification of its obligations is in bad faith and thus cannot use the insured's policy limits to limit its liability in a subsequent suit, and there is a strong indication in Illinois case law that this is in fact an erroneous statement of Illinois law. Therefore, we decline to adopt the district court's approach.[4]

The only question which remains is whether on the record before us there are other facts which might support a finding of bad faith in Penney's refusal to defend

---

1334 (7th Cir.), *motion denied,* 560 F.2d 865 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). Had the appellant raised its objection during trial or by a post-trial motion, the appellee would have been entitled to leave to amend his pleadings to include an allegation of bad faith. Fed.R.Civ.P. 15(a). Because no objection was made by the appellant earlier, any defect that might exist in the appellee's pleadings will not prevent us now from deciding the bad faith issue on the merits.

**4.** In justifying its holding, the district court correctly cited several Illinois cases for the

proposition that an insurer who wrongfully fails to defend its insured is estopped to raise policy defenses to the coverage. *See, e.g., Murphy v. Urso,* 88 Ill.2d 444, 451, 58 Ill.Dec. 828, 831, 430 N.E.2d 1079, 1082 (1981). It then concluded that "policy defenses" can include "policy limits," at least where the insurer fails to seek clarification of its obligations to the insured. Because there is no authority for this proposition in Illinois case law, and for the other reasons stated in the text, we decline to adopt this aspect of the district court's holding.

Hopkins. We can find none. While Penney appears to have handled the whole situation poorly, perhaps negligently, there has been no evidence introduced to indicate that Penney was actually in bad faith in its refusal to defend Hopkins. Therefore, Penney cannot be liable for the full amount of the judgment against Hopkins. Its liability extends only to the policy limit of Hopkins's insurance policy ($25,000), plus all damages proximately caused by its failure to defend Hopkins, including reasonable attorneys' fees. *Conway v. Country Casualty Insurance Co.,* 92 Ill.2d at 397, 65 Ill.Dec. at 938, 442 N.E.2d at 249. Accordingly, we affirm the district court's finding that a valid insurance contract was in effect at the time of Hopkins's automobile accident on June 17, 1977, but vacate the award of damages and remand to the district court for a proper awarding of damages as described in this opinion.