Stanley GREEN, as Assignee of Dexter Hopkins, Plaintiff-Appellant, Cross-Appellee,

v.

The J.C. PENNEY AUTO INSURANCE COMPANY, INC., a corporation, Defendant-Appellee, Cross-Appellant.

Nos. 85–2993, 85–3022.

United States Court of Appeals, Seventh Circuit.

Argued June 3, 1986.

Decided Nov. 25, 1986.

---

Edward J. Kionka, Winters & Garrison, Marion, Ill., for plaintiff-appellant, cross-appellee.

David I. Hares, Shifrin & Treiman, Clayton, Mo., for defendant-appellee, cross-appellant.

Before CUMMINGS, WOOD and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

This case comes to us on appeal following the district court's calculation of damages pursuant to an earlier remand of this case by the Court. Our earlier remand established that defendant J.C. Penney Auto Insurance Company, Inc. ("Penney") wrongfully failed to defend its insured policyholder Dexter Hopkins ("Hopkins"). This appeal brought by plaintiff Stanley Green ("Green"), as assignee of Hopkins, raises several questions regarding the proper calculation of damages under Illinois law for a breach of an insurance company's duty to defend its insured policyholder.

I

Because this case is on appeal to this Court for the second time, see *Green v. J.C. Penney Auto Insurance Co.*, 722 F.2d 330 (7th Cir.1983), only a brief summary of the facts is necessary. On June 17, 1977, Hopkins was involved in a car accident with Green. Hopkins was insured by Penney at the time, and the policy had a $25,000 limit. On September 12, 1977, Green submitted his claims to Penney, and indicated his willingness to settle his claim against Hopkins for $22,500. Penney responded and denied that Hopkins was insured by Penney at the time of the accident; Penney never responded to Green's settlement offer. Green then orally proposed a settlement of

$25,000, which also was never accepted by Penney.

Green proceeded to file suit against Hopkins in state court for injuries sustained in the June 17 automobile accident. Penney received notice of this suit, and yet Penney never filed a declaratory action to determine its obligations under Hopkins' insurance policy, nor did it defend Hopkins under a reservation of rights. Green obtained a default judgment against Hopkins on May 25, 1978. On February 25, 1981, a judgment of $122,500 was entered against Hopkins. Green subsequently received from Hopkins an assignment of any rights Hopkins might have against Penney.

The initial district court opinion and appeal to this Court established that Hopkins' insurance policy was legally in effect at the time of the accident, and so Penney had breached its duty to defend Hopkins. On the issue of the proper measure of damages, this Court noted that the Illinois Supreme Court, in *Conway v. Country Casualty Insurance Co.*, 92 Ill.2d 388, 65 Ill. Dec. 934, 442 N.E.2d 245 (1982), set forth several pertinent rules of law. This Court stated that an insurer's breach of its duty to defend its insured does not automatically expose the insurer to liability above the limits of the insured's policy. However, an insurer is liable for the full amount of a judgment entered against its insured, regardless of policy limits, if the insurer acted in bad faith. *Green,* 722 F.2d at 334. We then determined that Penney did not act in bad faith, and so Penney was not automatically exposed to liability in excess of the policy limits, even though the judgment entered in Green's underlying suit against Hopkins greatly exceeded the policy limits. We concluded that Penney's liability was the policy limit of $25,000 "plus all damages proximately caused by its failure to defend Hopkins, including reasonable attorneys' fees." *Green,* 722 F.2d at 335.

On remand, the district court found that but for Penney's breach of its duty to defend Hopkins, the case could have been settled for an amount within Hopkins' policy limits. Nevertheless, in calculating damages flowing from Penney's breach of this duty, the district court read this Court's prior decision as putting a ceiling of $25,000 on the damages it could award. The court also felt that our prior decision prevented it from either awarding attorneys' fees incurred by Green in prosecuting this declaratory judgment action against Penney or awarding interest on the full amount of the judgment entered against Hopkins. The court did award $480 to Green which represented fees and costs incurred in connection with the bankruptcy petition filed by Hopkins subsequent to the entry of the $122,500 judgment against him. Green appeals from the district court's calculation of damages, refusal to award interest on the entire $122,500 judgment, and refusal to award fees incurred by Green in the prosecution of this declaratory judgment action. Penney cross-appeals from the $480 of costs and fees awarded by the district court. We address these issues in this diversity case by applying Illinois law.

## II

■ This case involves several questions of state law which have not yet been precisely articulated by the courts of Illinois. It is therefore useful at the outset to keep in mind our duty in a diversity case: we must apply the state law that would be applied in this context by the Illinois Supreme Court. *Hill v. International Harvester Co.*, 798 F.2d 256, 261 n. 12 (7th Cir.1986). Intermediate appellate court cases are useful but not binding evidence of what the Illinois Supreme Court would do in a similar case. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Hill,* 798 F.2d at 261 n. 12; *White v. United States,* 680 F.2d 1156, 1159, 1161 (7th Cir.1982); *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 607 (7th Cir.1975) (Stevens, J.). See generally C. Wright, The Law of Federal Courts 373–374 (4th ed. 1983).

## A

The first issue is whether our prior determination that Penney did not act in bad faith in breaching its duty to defend Hopkins prevents an award of damages against Penney in excess of the policy limits of $25,000. Several aspects of this issue in Illinois are well settled. As a general rule damages in this type of case are usually limited to the policy limits, but there is an exception to this general rule if the insurer committed the breach of his duty to defend in bad faith. *Conway*, 92 Ill.2d at 398, 65 Ill.Dec. at 938, 442 N.E.2d at 249; *Murphy v. Clancy*, 83 Ill.App.3d 779, 796, 38 Ill.Dec. 863, 877, 404 N.E.2d 287, 301 (1st Dist.1980), reversed in part on other grounds *sub nom. Murphy v. Urso*, 88 Ill.2d 444, 58 Ill.Dec. 828, 430 N.E.2d 1079 (1981); *Aetna Cas. & Sur. Co. v. Dichtl*, 78 Ill.App.3d 970, 974–975, 34 Ill.Dec. 759, 763, 398 N.E.2d 582, 586 (2d Dist.1979); *Reis v. Aetna Cas. & Sur. Co.*, 69 Ill.App.3d 777, 790, 25 Ill.Dec. 824, 834, 387 N.E.2d 700, 710 (1st Dist.1978). It is significant to note that where an insurer does act in bad faith, he can be liable for damages in excess of the policy limit even though there is no causal relationship between the insurer's bad faith and the entry of a judgment in excess of the policy limits. Applying this rule to the instant case, if Penney had acted in bad faith, then it could have been liable for the entire $122,500 judgment, even though if Penney had defended Hopkins from the start and not breached its duty the same $122,500 judgment against Hopkins may well have occurred, in which case Penney would have had to pay only $25,000. Therefore, if Penney had acted in bad faith, its liability of $122,500 would exceed those damages needed to compensate Hopkins for Penney's breach of its duty to defend, namely $25,000 (plus costs and fees incurred by the insured in defending the underlying tort suit). This bad faith rule thus appears to be a punitive measure rather than a compensatory measure.

The issue of the proper damages for a breach of the duty to defend becomes complicated by subsequent statements made by the Illinois Supreme Court in the *Conway* case. After mentioning the bad faith rule, the Court in *Conway* continued on to say that " '[n]evertheless, damages for a breach of the duty to defend are not inexorably imprisoned within policy limits, but are measured by the consequences proximately caused by the breach.' " *Conway*, 92 Ill.2d at 397–398, 65 Ill.Dec. at 938, 442 N.E.2d at 249 (quoting *Reis*, 69 Ill.App.3d at 790, 25 Ill.Dec. at 834, 387 N.E.2d at 710) (emphasis supplied). The appellate court in *Reis*, though not the Illinois Supreme Court in *Conway*, continues by saying that "[a]ccordingly, ... if [the insured] can show that [the insurer] ... in bad faith or negligently failed to settle the claim, or because it abandoned [the insured's] defense, the excess judgment was entered, [the insured] may recover the total amount of the judgment against [the insured]." *Reis*, 69 Ill.App.3d at 790, 25 Ill.Dec. at 834, 387 N.E.2d at 710. These passages seem to suggest that if the insurer's breach of its duty to defend the insured proximately caused a judgment in excess of the policy limits to be entered against the insured, then the insured can recover the excess from the insurer, even though the insurer did not act in bad faith. Such a legal rule would be a compensatory measure, and as such would be consistent with the bad faith rule which is essentially a punitive measure. Under this scheme, a finding that the insurer did not act in bad faith would not preclude a damage award in excess of the policy limits.

The question of whether Illinois law allows an insurer to be liable in excess of policy limits for a breach of its duty to defend its insured, even though the insurer acted in good faith, is squarely raised by the facts of the instant case. We have already determined that Penney did not act in bad faith when it refused to defend Hopkins. However, Green made several settlement offers to Penney within the policy limits which Penney refused, apparently because of Penney's belief that Hopkins was not covered by the policy. The district court made the factual finding that but for

Penney's wrongful refusal to defend Hopkins, the case could have been settled for an amount within Hopkins' policy limits.

■ The district court effectively ruled that this Court's prior opinion mandated that damages not exceed the policy limit of $25,000. This ruling reads too much into our prior opinion. In the first appeal, this Court merely decided that there was no bad faith by Penney, and thus *under that theory* damages could not exceed the policy limits. We noted that Penney's liability included not only the policy limit of $25,000 but also "all damages proximately caused by its failure to defend Hopkins, including reasonable attorneys' fees." *Green*, 722 F.2d at 335. This in no way forecloses our consideration of whether Green should be awarded damages in excess of $25,000 because Penney's breach of its duty to defend Hopkins proximately caused the award of damages exceeding the policy limits.

As the previous analysis of *Conway* illustrates, the Supreme Court of Illinois has not squarely decided whether an insurer's failure to accept a settlement offer in the context of a breach of its duty to defend its insured exposes it to liability in excess of the policy limits, where the failure to accept the settlement offer caused a judgment in excess of the policy limits to be entered against the insured. A look at lower Illinois courts and courts generally reveals several different approaches. Some courts adhere solely to the bad faith rule, and view the insurer's failure to accept a settlement offer only as a relevant piece of evidence in determining whether the insurer acted in bad faith. See, *e.g., Seward v. State Farm Mutual Automobile Ins. Co.*, 392 F.2d 723, 726–728 (5th Cir.1968) (Wisdom, J.); *Hendry v. Grange Mutual Cas. Co.*, 372 F.2d 222 (5th Cir. 1967); *National Service Fire Ins. Co. v. Williams*, 61 Tenn.App. 362, 454 S.W.2d 362, 365–366 (1969). Other courts take the approach suggested by the proximate cause language contained in *Reis* and quoted by the Illinois Supreme Court in *Conway*. These courts hold that, wholly apart from bad faith, if an insurer refuses to

accept a settlement offer within the policy limits and wrongfully refuses to defend the insured, then damages may exceed the policy limits. See, *e.g., First of Georgia Ins. Co. v. Dube*, 376 So.2d 910, 911 (Fla.Dist. Ct.App.1979); *George R. Winchell, Inc. v. Norris*, 6 Kan.App.2d 725, 633 P.2d 1174, 1177 (1981). Some courts, notably those in California, follow this causation approach but add that the settlement offer rejected by the insurer must be reasonable. *Commercial Union Assurance Cos. v. Safeway Stores*, 26 Cal.3d 912, 916–917, 164 Cal. Rptr. 709, 711, 610 P.2d 1038, 1040 (1980); *Johansen v. California State Automobile Ass'n Inter-Insurance Bureau*, 15 Cal.3d 9, 12–13, 123 Cal.Rptr. 288, 290, 538 P.2d 744, 746 (1975); *State Farm Mutual Automobile Ins. Co. v. Allstate Ins. Co.*, 9 Cal.App.3d 508, 528–531, 88 Cal.Rptr. 246, 258–261 (1970) (cited by Illinois appellate court in *Reis* ).

A third potential approach to this issue is illustrated by some Illinois appellate courts. Wholly apart from an insurer's duty to defend its insured, certain Illinois courts have imposed a duty on the insurer to consider in good faith the insured's interest as well as its own interest in a claim where the recovery may otherwise exceed the policy limits. Under this intermediate approach, if the insurer's conduct in refusing to settle a claim within policy limits amounts to fraud, negligence, or bad faith, it may be held liable for the entire judgment entered against its insured, regardless of policy limits. See, *e.g., Adduci v. Vigilant Ins. Co.*, 98 Ill.App.3d 472, 475, 53 Ill.Dec. 854, 857, 424 N.E.2d 645, 648 (1st Dist.1981); *Scroggins v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 1030, 30 Ill.Dec. 682, 684, 393 N.E.2d 718, 720 (1st Dist.1979). Although in the majority of these cases the insurer did not additionally breach its duty to defend its insured, this same rule regarding the refusal to accept a settlement offer has been applied in cases where the insurer also wrongfully refused to defend its insured. *La Rotunda v. Royal Globe Ins. Co.*, 87 Ill.App.3d 446, 454–455, 42 Ill.Dec. 219, 227, 408 N.E.2d 928, 936 (1st Dist.1980) ("[A] wrongful refusal to defend

does not alter the legal standard by which the insurer's failure to settle is judged.").

■ We consider this third intermediate approach the best legal rule and the one that would be adopted by the Illinois Supreme Court if it had the instant case before it. The rule acknowledges the causation language of *Conway* and *Reis,* by allowing an insured to recover the entire judgment where the insurer's negligent failure to accept a settlement offer causes a judgment in excess of policy limits to be entered against the insured party. Since bad faith requires a subjective showing and negligence requires only an objective showing, this rule potentially allows a recovery in excess of the policy limits even though the insurer did not act in bad faith. Additionally, since a negligent refusal of a settlement offer within policy limits is tantamount to a refusal of a reasonable settlement offer, this rule is consistent with the citation of the California case of· *State Farm* by *Reis,* and in turn the Illinois Supreme Court's citation of *Reis* in *Conway.*

Applying this rule to the instant case, it is not clear from the record whether Penney's refusal to accept Green's settlement offers was unreasonable. We therefore remand this case to the district court and instruct the court to apply the legal rule announced today.

B

The second issue on appeal is whether Green is entitled to interest on the full amount of the judgment entered against Penney from the time judgment was entered until the time defendant tendered the $25,000 owed under the policy. The district court ruled that this Court's prior opinion mandated that Green not be awarded such interest. However, this ruling misreads our earlier opinion. In the first appeal, this Court never addressed this issue. Our only relevant comment was that Penney's liability included "all damages proximately caused by its failure to defend Hopkins, including reasonable attorneys' fees." *Green,* 722 F.2d at 335. This in no way

forecloses the issue of how much interest should be awarded to Green.

The resolution of this issue requires a determination of how Illinois law construes the pertinent portions of the insurance policy in question. The policy states that Penney will pay "all interest on the entire amount of any judgment therein which accrues after the entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability therein." Def.Ex.E.

■ Under the terms of this policy, we hold that Penney must pay interest on the total amount of the $122,500 judgment. There is no ambiguity in the above-cited passage from the policy. In describing Penney's obligation to pay interest, the policy refers to "the entire amount of any judgment." If this clause were intended to refer only to that part of the judgment within the policy limits, then Penney could easily have drafted the policy to say so. This is particularly true in view of the latter half of the sentence, which limits the term "judgment" in precisely this manner.

Moreover, Illinois case law mandates this construction. The landmark Illinois case is *River Valley Cartage Co. v. Hawkeye-Security Ins. Co.,* 17 Ill.2d 242, 161 N.E.2d 101 (1959) (Schaefer, J.). The clause at issue in *River Valley* required the insurance company to pay "all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of the judgment as does not exceed the limit of the company's liability thereon." It is noteworthy that this clause is more ambiguous than the clause at issue in the instant case since it refers simply to the "judgment," whereas the policy in the instant case refers to "the entire amount of any judgment." Nevertheless, the Illinois Supreme Court concluded that the clause created liability on the entire judgment, over and above the policy limit. *River Valley,* 17 Ill.2d at 244–245, 161 N.E.2d at 103. Subsequent courts, including this Court, have faced the same language liti-

gated in *River Valley* and have reached the same result under Illinois law. See, *e.g.,* *Pawlik v. State Farm Mutual Automobile Ins. Co.,* 302 F.2d 255, 258 (7th Cir.1962); *Murphy v. Clancy,* 83 Ill.App.3d 779, 796, 38 Ill.Dec. 863, 877, 404 N.E.2d 287, 301 (1st Dist.1980), reversed in part on other grounds *sub nom. Murphy v. Urso,* 88 Ill.2d 444, 58 Ill.Dec. 828, 430 N.E.2d 1079 (1981); *Gass v. Carducci,* 52 Ill.App.2d 394, 402b, 203 N.E.2d 289, 290 (1st Dist.1964); cf. *Allegheny Airlines v. Forth Corp.,* 663 F.2d 751, 755–756 (7th Cir.1981) (reaches same result under Indiana law; cites Illinois cases and notes that the majority of jurisdictions "extend liability to interest on the entire amount of the judgment").

Additionally, the Illinois Supreme Court has commented that insurers themselves have agreed with this result. The insurance industry noted the possible ambiguity in the clause construed in *River Valley* and changed it to the clause found in Hopkins' policy in order to eliminate all doubt and make it clear that the insurer must pay interest on the entire amount of any judgment until it pays off its liability. *River Valley,* 17 Ill.2d at 245–246, 161 N.E.2d at 103–104. Accordingly, there is no doubt that Penney must pay post-judgment interest on the entire $122,500 judgment. We remand for a determination of the appropriate amount of interest owed.

### C

The third and final issue raised on appeal is whether Green is entitled to attorneys' fees for prosecuting this declaratory judgment action against Penney. The district court ruled that our previous disposition of the case prevented such an award of fees to Green. But in our prior opinion we stated that Penney is liable for "all damages proximately caused by its failure to defend Hopkins, including reasonable attorneys' fees." *Green,* 722 F.2d at 335. Since there would have been no need for this declaratory judgment action if Penney had defended Hopkins, our prior disposition in no way forecloses this issue. To resolve this issue, we must once again turn to

Illinois law. And once again, past Illinois case law does not yield an unambiguous result.

There seems to be no Illinois Supreme Court case that is dispositive of this issue. Several intermediate appellate court cases have held that an insured may not recover attorneys' fees and costs for bringing a declaratory judgment action against the insurer. See, *e.g., Tuell v. State Farm Fire & Cas. Co.,* 132 Ill.App.3d 449, 454, 87 Ill.Dec. 469, 473, 477 N.E.2d 70, 74 (2d Dist.1985); *Preferred Risk Mutual Ins. Co. v. U.S. Fidelity & Guaranty Co.,* 77 Ill.App.3d 266, 271–272, 32 Ill.Dec. 799, 803–804, 395 N.E.2d 1180, 1184–1185 (1st Dist.1979); *Brown Bag Co. v. Bituminous Cas. Corp.,* 117 Ill.App.2d 287, 295–296, 254 N.E.2d 577, 581 (1st Dist.1969); *Country Mutual Ins. Co. v. Murray,* 97 Ill. App.2d 61, 80–81, 239 N.E.2d 498, 509 (2d Dist.1968). In contrast, the appellate court in the Fifth District has recently held that where an insurer breached its duty to defend its insured, the insured party is entitled to attorneys' fees in both the underlying suit and the prosecution and appeal of the declaratory judgment action against its insurer. *Trovillion v. U.S. Fidelity & Guaranty Co.,* 130 Ill.App.3d 694, 700–701, 86 Ill.Dec. 39, 44, 474 N.E.2d 953, 958 (5th Dist.1985). Several courts from other jurisdictions have also reached this result. See, *e.g., Cohen v. American Home Assurance Co.,* 255 Md. 334, 258 A.2d 225 (1969); *Security Mutual Cas. Co. v. Luthi,* 303 Minn. 161, 226 N.W.2d 878 (1975); *New Jersey Mfrs. Ins. Co. v. Consolidated Mutual Ins. Co.,* 124 N.J.Super. 598, 308 A.2d 76 (Super.Ct. Law Div.1973); *Hegler v. Gulf Ins. Co.,* 270 S.C. 548, 243 S.E.2d 443 (1978).

In our view, *Trovillion* is the superior rule. Therefore, where an insurer breaches its duty to defend its insured and thereby forces the insured to bear the burden of initiating a declaratory judgment action against the insurer, the insured can recover attorneys' fees incurred from bringing the declaratory judgment action. Such a holding is entirely consistent with

the Illinois Supreme Court's statement that " 'damages for a breach of the duty to defend ... are measured by the consequences proximately caused by the breach.' " *Conway*, 92 Ill.2d at 397–398, 65 Ill.Dec. at 938, 442 N.E.2d at 249 (quoting *Reis*, 69 Ill.App.3d at 790, 25 Ill.Dec. at 834, 387 N.E.2d at 710). Moreover, we agree with the following criticism of the contrary legal rule made by a leading treatise on insurance law:

> [A contrary rule] appears to be unfair to the insured. After all, the insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the [contrary rule were followed], it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above.

J. Appleman, 7C Insurance Law and Practice § 4691, at 283 (1979). We therefore reject Penney's cross-appeal as to fees already awarded and remand for a calculation of fees incurred by Green in both the prosecution and appeal of its declaratory judgment action.

For all of the above reasons, the decision of the district court is reversed and the cause is remanded for further proceedings consistent with this opinion.