**NATIONAL CYCLE, INC.,**
**Plaintiff–Appellee,**

v.

**SAVOY REINSURANCE COMPANY LIMITED, Defendant–Appellant.**

**Nos. 90–2918, 90–3108.**

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1991.

Decided July 11, 1991.

Joel L. Widman, Andrew P. Karabetsos, Widman, Goldberg & Zulkie, Chicago, Ill., for plaintiff-appellee.

Robert M. Chemers, Robert J. Franco, Pretzel & Stouffer, Chicago, Ill., for defendant-appellant.

Before COFFEY, EASTERBROOK and MANION, Circuit Judges.

EASTERBROOK, Circuit Judge.

National Cycle, Inc., makes motorcycle windshields. Going bare (operating without insurance) is a daring strategy when one's customers zoom around at 65 miles per hour without significant protection against skids or collisions. For five months in 1985, however, National Cycle carried no insurance. During that time Ronald Birkheimer was killed while riding a motorcycle, and his estate blamed National Cycle. Before the Birkheimer estate filed suit, National Cycle bought insurance. Its policy for August 1985 to August 1986 covered only new occurrences and therefore did not apply to the Birkheimer accident.

In August 1986 National Cycle bought a policy from Savoy Reinsurance Company. National asked its insurance broker to obtain a claims-made policy—that is, insurance covering claims made during the policy period, without regard to the date of the accident or other occurrence giving rise to that claim. Insurers asked to issue claims-made policies protect themselves against liability for old occurrences by including a "retroactive date" specifying the earliest occurrence to be covered, no matter when the claim is made. The retroactive date in a claims-made policy will be the effective date of the first claims-made policy issued to the insured. This partitions coverage between occurrence and claims-made policies. Firms that issued occurrence policies will be responsible for all accidents occurring during their periods; the claims-made insurer does not supply excess insurance for claims covered by occurrence policies. This segmentation leaves the insured with only one policy applicable to each accident—if the insured has kept at least one in force for the entire period. If there was

a gap in occurrence coverage, the inclusion of a retroactive date in the claims-made policy means that the gap remains.

Savoy issued a policy in the amount, and for the period, National Cycle requested. But it issued an occurrence policy rather than a claims-made policy. National Cycle caught the discrepancy and asked Savoy to convert the policy. Savoy complied. Occurrence policies lack retroactive dates, and National Cycle had every reason to expect that Savoy would include one with the endorsement converting its policy from occurrence to claims-made. That did not happen. Back came the endorsement, with no retroactive date. So the policy as written covered any claim filed between August 1986 and August 1987, no matter when the accident occurred.

Birkheimer's estate filed suit in West Virginia on April 15, 1987. National Cycle tendered the defense to Savoy. Savoy did not assume the defense; it did not deny coverage; it did not file a declaratory judgment action seeking reformation of the policy. For two months it did nothing. In June it sent National Cycle a new endorsement adding a retroactive date that would exclude coverage of Birkheimer's claim. Neither before nor since has it lifted a finger to defend National Cycle or obtain approbation of this after-the-fact change in the policy. The state court entered a default judgment against National Cycle (which says that it assumed that Savoy, having failed to deny coverage, must have been attending to its interests), and a jury later concluded that National Cycle is responsible for 25% of the total liability, which it fixed at $1.5 million.

■ Stymied by Savoy's passivity, National Cycle filed this diversity action seeking a declaratory judgment that Savoy must satisfy the award in the Birkheimer action. Savoy replied with a counterclaim seeking reformation of the policy to include a retroactive date. We may assume that Savoy would have been entitled to reformation had it acted promptly. National Cycle had every reason to think that Savoy would include a retroactive date in the endorsement converting the occurrence policy to a

claims-made policy, and its omission appears to have been an oversight. Savoy did not act promptly. It slighted its obligation to defend National Cycle until it obtained reformation, and its insured suffered judgment as a result. Savoy's policy *as written* covered Birkheimer's claim, and Savoy therefore had to defend its client. Its failure to do this—to do *anything* in time to protect its client's interests—forfeits any entitlement to reformation now. *Conway v. Country Casualty Insurance Co.*, 92 Ill.2d 388, 65 Ill.Dec. 934, 442 N.E.2d 245 (1982); see also *Maneikis v. St. Paul Insurance Co.*, 655 F.2d 818, 821–22 (7th Cir.1981), and *Playboy Enterprises, Inc. v. St. Paul Fire & Marine Insurance Co.*, 769 F.2d 425, 427–30 (7th Cir.1985), both summarizing Illinois law. Savoy argues that its failure to defend National Cycle cannot enlarge the coverage of the policy, but this misses the point. "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 1991 WL 80942 at * 3, 1991 Ill. LEXIS 33 at * 8 (1991). The policy as written covered Birkheimer's claim; Savoy needed reformation, a subject on which it had the burdens of initiation and persuasion. Its failure to take even the minimum steps needed to protect National Cycle in the interim disqualifies Savoy from obtaining this boon.

The district court ordered Savoy to reimburse National Cycle for the legal fees it incurred in this litigation. As the district court recognized, a statute limits awards of attorneys' fees to cases in which the insurer acted in bad faith, Ill.Rev.Stat. ch. 73 ¶ 767, which the court believed Savoy had not. Notwithstanding the statute, one division of the appellate court of Illinois has created a common law rule obliging an insurer to pay legal expenses if its quiescence forces the insured to bring a declaratory judgment action. *Trovillion v. United States Fidelity & Guaranty Co.*, 130

Ill.App.3d 694, 700–01, 86 Ill.Dec. 39, 44, 474 N.E.2d 953, 958 (5th Dist.1985). Although the majority of state cases go the other way, e.g., *Tuell v. State Farm Fire & Casualty Co.*, 132 Ill.App.3d 449, 454, 87 Ill.Dec. 469, 473, 477 N.E.2d 70, 74 (2d Dist.1985) (collecting authority); *Preferred Risk Mutual Insurance Co. v. United States Fidelity & Guaranty Co.*, 77 Ill. App.3d 266, 271–72, 32 Ill.Dec. 799, 803–04, 395 N.E.2d 1180, 1184–85 (1st Dist.1979), we concluded in *Green v. J.C. Penney Auto Insurance Co.*, 806 F.2d 759, 765 (7th Cir.1986), that *Trovillion* "is the superior rule" and predicted that the Supreme Court of Illinois eventually would agree. Savoy concedes that *Trovillion* and *Green* require the award of legal fees in National Cycle's favor. It asks us to overrule *Green* or certify the question to the Supreme Court of Illinois, which has yet to take up the subject.

Neither *Trovillion* nor *Green* has found any takers among the appellate courts of Illinois that have considered the question. One decision, *Brotherhood Mutual Insurance Co. v. Roseth*, 177 Ill.App.3d 443, 453–54, 126 Ill.Dec. 669, 676, 532 N.E.2d 354, 361 (1st Dist.1988), disapproves both cases explicitly. Our own subsequent opinions have not been models of consistency. One year after *Green* we affirmed a decision that had denied attorneys' fees on the sole authority of *Tuell*, a case *Green* cited and elected not to follow. We not only affirmed the judgment but also adopted the district court's opinion. *Tews Funeral Home, Inc. v. Ohio Casualty Insurance Co.*, 832 F.2d 1037, 1039, 1047 (7th Cir. 1987). *Tews* does not mention *Green*. A few months ago, citing both *Tuell* and *Tews*, we denied a request for attorneys' fees and implied that *Tews* may have discarded *Green*. *A. Kush & Associates, Ltd. v. American States Insurance Co.*, 927 F.2d 929, 935 & n. 8 (7th Cir.1991). *Kush* allowed, however, that *Green* still controls when "a breach of the duty to defend 'forced' the insured to bring a declaratory judgment [action] against the insurer." *Ibid.*

■ This is not tidy. There is no way we can eliminate the conflict among the appellate decisions of Illinois without certifying the question to the Supreme Court of Illinois. Yet certification is inappropriate, for two reasons. First, the right time to certify a question is before the first federal decision on the point. Certification eliminates the need to expend judicial resources predicting how another court will decide a question. Once we have invested the time and effort to make the prediction, the costs have been sunk. Second, certification takes time, which works against National Cycle. Savoy has neither paid the judgment nor posted a supersedeas bond. It appears determined to resist collection. See 1991 WL 83541, 1991 U.S.Dist. Lexis 6457 (N.D.Ill.). It has not paid its lawyers either. Illinois has forbidden Savoy to write new policies. For National Cycle, collection deferred may be collection denied. As a judgment debtor in default, Savoy is not entitled to have another go in still another court.

■ *Green*, a fully considered decision of this court, governs today. One panel may not overrule another without circulating the decision to the full court under Circuit Rule 40(f). *Tews* was not so circulated; it does not discuss *Green;* indeed, for all we can tell the attorneys' fees issue was not raised on appeal in *Tews*. (The panel adopted the district court's opinion without distinguishing questions pressed on appeal from those dropped after the district court's decision.) *Kush* does discuss *Green*, and like the panel in *Kush* we believe that *Green* should not be given an expansive reading. After all, *Green* cast its lot with a single case that had no supporters at the time and has garnered none since. As *Kush* recognized, however, *Green's* minimum holding is that attorneys' fees should be awarded when "a breach of the duty to defend 'forced' the insured to bring a declaratory judgment [action] against the insurer." 927 F.2d at 935 n. 8. *Green* means no more than that but also means no less.

The judgment is affirmed. In light of Savoy's recalcitrant and possibly precari-

ous position, we issue the mandate today so that National Cycle may pursue its efforts to collect.